665 F.2d 1367
 Frank MAXEY and Mary Amanda Maxey, Individually and as next
Friends of Mary Kathryn Maxey, et al.,
Plaintiffs-Appellants Cross-Appellees,
v.
FREIGHTLINER CORPORATION, Defendant-Appellee Cross-Appellant.
 No. 78-2301.
 United States Court of Appeals,
Fifth Circuit.*
 Jan. 25, 1982.
 
 Windle Turley, Sylvia M. Demarest, Dallas, Tex., for Frank Maxey et al.
 Strasburger & Price, Royal H. Brin, Jr., Elliott, Churchill, Hansen, Dyess & Maxfield, Thomas G. Nash, Jr., Dallas, Tex., for Freightliner Corp.
 A. J. Levy, New Orleans, La., for amicus curiae Ass'n of Trial Lawyers of America.
 Jack Pew, Jr., Dallas, Tex., for amicus curiae Tex. Ass'n of Defense Council.
 Appeals From the United States District Court for the Northern District of Texas.
 Before GODBOLD, Chief Judge, BROWN, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, THOMAS A. CLARK, WILLIAMS and GARWOOD, Circuit Judges.**
 SAM D. JOHNSON, Circuit Judge:
 
 
 1
 The Maxeys[1] brought this action against Freightliner Corporation to recover actual and exemplary damages resulting from the deaths of Billy and Dee Maxey, who were killed when a fuel tank on a truck tractor manufactured by Freightliner ruptured and ignited. Following a jury trial, the district court entered judgment for $150,000 in favor of the Maxey children on the jury's finding that the fuel system manufactured by Freightliner was defectively designed, but set aside the jury's verdict for $10,000,000 in exemplary damages, which was based on the jury's finding of Freightliner's gross negligence in designing the fuel system. The district court also set aside the jury's finding that, by using Freightliner's product, Billy Maxey had assumed the risk of personal injury. The Maxeys appeal the district court's order setting aside the jury's finding of gross negligence, and Freightliner appeals the award of $150,000 in actual damages. A divided panel of this Court affirmed the judgment of the district court. Maxey v. Freightliner Corporation, 623 F.2d 395 (5th Cir. 1980). Finding that, in light of a recent decision of the Texas Supreme Court, which we are Erie[2]-bound to acknowledge, it is appropriate to allow the district court to reconsider its decision to set aside the jury's finding of gross negligence on the part of Freightliner, we vacate the judgment of the district court and remand for further proceedings consistent herewith.I. Facts
 
 
 2
 On November 21, 1974, Billy and Dee Maxey were en route to Michigan when, while rounding a curve outside of Comanche, Texas, their tractor trailer rig tipped over and skidded to a stop on its right side. The right fuel tank, which was attached to the outside of the truck frame rails, ruptured, spilled its fuel, and ignited. Both Billy and Dee Maxey died as a result of the fire.
 
 
 3
 Plaintiffs brought this suit, based on diversity of citizenship, 28 U.S.C. § 1332, alleging that the design of the fuel system was unreasonably dangerous, that Freightliner failed to warn users of the product of this danger, and that Freightliner's conduct in the design, testing, and sale of trucks with this fuel system amounted to gross indifference, entitling plaintiffs to an award of both actual and exemplary damages under Texas law.
 
 
 4
 The case was submitted to the jury on special interrogatories, which found in favor of the Maxeys on their claim that the fuel system and tank were defectively designed, and accordingly awarded the Maxey children $150,000 in actual damages. The jury also found that Freightliner was guilty of gross indifference to the rights and welfare of others in its design of the fuel system and tank, and awarded $10,000,000 in punitive damages.[3] The jury also found, however, that by use of the Freightliner product, Billy Maxey had assumed the risk of injury.
 
 
 5
 In a subsequent Order and Opinion, Maxey v. Freightliner Corporation, 450 F.Supp. 955 (N.D.Tex.1978), the district court set aside the jury's verdict on the issues of gross indifference and assumption of the risk, and entered judgment on the verdict for actual damages. Relying upon Sheffield Division, Armco Steel v. Jones, 376 S.W.2d 825 (Tex.1964), and Woolard v. Mobil Pipe Line Co., 479 F.2d 557, 565 (5th Cir. 1973), the district court set aside the jury's verdict for exemplary damages on the ground that Freightliner's compliance with industry custom failed to evince "an entire want of care," and therefore negated a finding of "a degree of 'gross negligence' which approximates a fixed purpose to bring about the injury of which the plaintiff complains." 450 F.Supp. at 963, quoting Sheffield Division, Armco Steel Corporation v. Jones, 376 S.W.2d at 828. Finding that neither decedent possessed subjective awareness of the defects inherent in the fuel system, the district court set aside the jury's finding of assumption of the risk. Finally, recognizing that this Court might disagree with its decision to set aside the jury's finding of gross negligence, the district court found that, if exemplary damages were appropriate in this case, the jury's award of $10,000,000 was not excessive.
 
 
 6
 On appeal, a divided panel of this Court affirmed. 623 F.2d at 395. Relying upon this Court's earlier decision in Hernandez v. Smith, 552 F.2d 142 (5th Cir. 1977), as well as Sheffield Division, Armco Steel Corp. v. Jones, supra, a majority of the panel determined that
 
 
 7
 Under Texas law, there cannot be that "conscious indifference" to the welfare of others constituting gross negligence for purposes of exemplary damages if it is shown that defendant exercised even "slight" care.
 
 
 8
 623 F.2d at 399, quoting Hernandez v. Smith, 552 F.2d at 143. Concluding that it was "unable to discern from (a) reading of the record evidence of appellee's failure to use even 'slight' care," the panel majority affirmed the district court's decision to set aside the award of exemplary damages. 623 F.2d at 399. The panel majority also affirmed the district court's determination that Freightliner's compliance with industry custom precluded a finding of gross negligence. With respect to Freightliner's cross-appeal, however, the panel affirmed the district court's decision to set aside the jury's finding of assumption of the risk, as well as its entry of judgment on the award of actual damages. This Court voted to rehear this case en banc, Maxey v. Freightliner Corporation, 634 F.2d 1008 (5th Cir. 1980), thereby vacating the panel opinion. See Fifth Circuit Local Rule 17.
 
 II. The Maxeys' Appeal
 
 9
 In Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969) (en banc), this Court established the standard by which both this Court and district courts in this Circuit determine whether there is sufficient evidence to submit a case to the jury in connection with motions for directed verdict and for judgment non obstante veredicto. Under the standard established in Boeing, a motion for directed verdict or for judgment n. o. v. should be granted only when the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. The court should consider all of the evidence-not just that evidence which supports the nonmovant's case-but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded persons in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. A motion for directed verdict or judgment n. o. v. should not be decided by which side has the better of the case, nor should the motion be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of fact, and not the court, to weigh conflicting evidence and inferences, and to determine the credibility of witnesses. 411 F.2d at 374-75.
 
 
 10
 As noted in the panel opinion of this case, "(t)he problem, however, lies not with merely stating the rules, but with applying them to a particular set of facts." 623 F.2d at 398. Moreover, cases brought under federal diversity jurisdiction present the additional task of attempting to correctly interpret and apply state law. Following the issuance on August 8, 1980, of the panel opinion in the present case, the Texas Supreme Court decided Burk Royalty Company v. Walls, 616 S.W.2d 911 (Tex.1981), in which that court established a uniform Texas definition of gross negligence, and rejected the "some care" test theretofore often applied by Texas courts in gross negligence cases, as well as by the district court and the panel majority in the case sub judice.
 
 
 11
 A. The Texas Standard Governing Gross Negligence
 
 
 12
 The availability of exemplary damages for wrongful death is guaranteed by article 16, section 26 of the Constitution of the State of Texas:[4]Every person, corporation, or company, that may commit a homicide, through a wilful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be ....
 
 
 13
 Almost one hundred years ago, Chief Justice Stayton of the Texas Supreme Court announced the definition of gross negligence that is still controlling today:
 
 
 14
 Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was a result of a conscious indifference to the right or welfare of the person or persons to be affected by it.
 
 
 15
 Missouri Pacific Railroad Co. v. Shuford, 72 Tex. 165, 10 S.W. 408, 411 (1888) (emphasis added).
 
 
 16
 Texas courts historically have articulated a number of tests for applying the Shuford definition of gross negligence to the facts of a particular case. Among these is the so-called "some care" test exemplified by the Texas Supreme Court's decision in Sheffield Division, Armco Steel Corp. v. Jones, 376 S.W.2d 825 (Tex.1964), in which the court interpreted its earlier decision in Shuford to require, as a prerequisite to a finding of gross negligence, that there be "an entire want of care" by the defendant, and that defendant's conduct be such as to approximate "a fixed purpose to bring about the injury of which the plaintiff complains." 376 S.W.2d at 828. In so holding, the court rejected the notion that "negligence may be gross, not only when it is evidenced by an entire want of care, but even when the exercise of so slight a degree of care as to justify the conclusion that the party was indifferent to the welfare of others." Id. Consequently, under the Sheffield rationale, evidence of "some care" by the defendant necessarily precluded a finding of "that entire want of care" described in Shuford, and likewise prohibited a finding of gross negligence. For this reason, the Sheffield rule is referred to by Texas courts as the "some care" test.
 
 
 17
 In Burk Royalty Company v. Walls, 616 S.W.2d 911 (Tex.1981), the Texas Supreme Court recently had occasion to reassess the principles governing gross negligence in Texas, including the "some care" test theretofore often used by Texas courts. In that case, plaintiff brought suit individually and as next friend and guardian of her minor son, against the employer of her deceased husband, seeking exemplary damages for the gross negligence of defendant in failing to follow certain safety procedures while "pulling" wet tubing from an oil well. During the "pulling" process, plaintiff's decedent became covered with oil that spewed out of the tubing, and the oil ignited, causing his death. The jury found that the failure of Kenneth Swetnam, a supervisor employed by defendant, to follow approved safety procedures was gross negligence, and accordingly awarded exemplary damages. Finding that there was some evidence to support the jury's finding of gross negligence, the Texas Court of Civil Appeals affirmed on this issue. Burk Royalty Co. v. Walls, 596 S.W.2d 932 (Tex.Civ.App.-Fort Worth 1980). On appeal to the Texas Supreme Court, the issue presented was "whether there (was) some evidence to support the jury's finding that Kenneth Swetnam was grossly negligent on the occasion in question." 616 S.W.2d at 914. The Texas Supreme Court characterized defendant's argument as asserting "that there (was) no evidence of such an entire want of care on the part of Swetnam as would amount to conscious indifference and support an award of exemplary damages." Id. at 915. Defendant's argument was based on "a number of cases which hold that if there is 'some care' exercised, there necessarily cannot be 'an entire want of care,' and thus, exemplary damages are improper," Id., citing, inter alia, Sheffield Division, Armco Steel Corp. v. Jones, 376 S.W.2d 825 (Tex.1964).
 
 
 18
 The Texas Supreme Court began its analysis in Burk Royalty with both an expansive review of the historical development of gross negligence in Texas, and a thorough examination of the Texas decisions defining gross negligence in a variety of ways. With regard to cases arising under the workers' compensation statutes, the court identified three stages of development: an "early" period, a so-called "active/passive" period, and the "some care" period. 616 S.W.2d at 917-18. The court noted that
 
 
 19
 It was ... during (the) early period that the first hint of a "some care" test surfaced. In Magnolia Petroleum Co. v. Ford, 14 S.W.2d 97, 101 (Tex.Civ.App.-Eastland 1929), writ ref'd, per curiam, 118 Tex. 461, 17 S.W.2d 36 (1929), the court said, "This very act evidencing some care takes the transaction out of the definition of gross negligence."
 
 
 20
 616 S.W.2d at 918 (emphasis in original). The court noted in Burk Royalty that subsequent cases also used the "some care" test as a method for reviewing challenges to jury verdicts of gross negligence:
 
 
 21
 The last of the cases applying the active/passive test to gross negligence also introduced the "some care" test into the review of gross negligence findings. In Sheffield Division, Armco Steel Corp. v. Jones, 376 S.W.2d 825 (Tex.1964) the court embrace(d) the "some care" test while extending the active/passive distinction.
 
 
 22
 616 S.W.2d at 918. Based upon its examination of the Texas cases employing the "some care" test, the Texas Supreme Court explained that
 
 
 23
 (t)he rationale of the "some care" cases is that there cannot be degrees of entire want of care; there is either an entire want of care or there is not. If there is any care, i.e., "some" care, then there cannot be an entire want of care. A thorough search of the appellate decisions of this state has failed to produce a single case in which the jury's finding of gross negligence against an employer has been upheld on appeal under the "some care" test.
 
 
 24
 616 S.W.2d at 918-19 (emphasis in original; citations omitted).
 
 
 25
 After examining the Texas cases defining gross negligence in a variety of ways, the Texas Supreme Court held in Burk Royalty that the original definition of gross negligence as stated in Shuford is the definition to be used in all gross negligence cases. Relying in part upon prior decisions in which the court had declined to apply the "some care" test, Atlas Chemical Industries, Inc. v. Anderson, 524 S.W.2d 681, 688-89 (Tex.1975); McPhearson v. Sullivan, 463 S.W.2d 174, 176 (Tex.1971); Harbin v. Seale, 461 S.W.2d 591, 593 (Tex.1970), the court also expressly rejected the "some care" test, and specifically overruled its prior decisions, including Sheffield, which had applied that test. 616 S.W.2d at 921-22.
 
 
 26
 The Texas Supreme Court advanced several reasons in support of its decision to overrule Sheffield. First, the court noted that the "some care" test, by allowing a defendant to overturn a jury verdict of gross negligence by a simple showing that there was "some evidence" that did not support the jury's finding, improperly reversed the traditional burden under Texas law that a party may overturn a verdict only by showing that there is no evidence in support of that finding. 616 S.W.2d at 921. The court emphasized that, contrary to the long-established principle in Texas that a court ruling on a motion for judgment n. o. v. looks only at the evidence in support of the verdict, the "some care" test required a court to set aside a jury verdict if, looking only at the evidence in derogation of the verdict, i.e., evidence of "some care," an inference of conscious indifference was negated. Id.[5]
 
 
 27
 Second, the court emphasized that "(i)n testing the jury finding of gross negligence, the phrase 'entire want of care' must be understood in the context of the whole sentence. The jury is not simplistically instructed that it must find an 'entire want of care,' but '... such an entire want of care as ... shows the act or omission was the result of conscious indifference ....' " 616 S.W.2d at 922. In so holding, the Texas Supreme Court repudiated the rationale of Sheffield, noted supra, that "there cannot be degrees of entire want of care; there is either an entire want of care or there is not. If there is any care, i.e., 'some' care, then there cannot be an entire want of care." Id. at 918. Relying upon its earlier decisions in Atlas Chemical, McPhearson, and Harbin, the court emphasized that the essential inquiry is not the degree of neglect, i.e., whether the defendant exercised "an entire want of care," but rather is whether an inference of conscious indifference is raised:
 
 
 28
 The essence of gross negligence is not the neglect which must, of course, exist. What lifts ordinary negligence into gross negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare, and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care.
 
 
 29
 616 S.W.2d at 922 (emphasis in original).
 
 
 30
 From the foregoing, it is readily apparent that the court in Burk Royalty did not undertake to establish a "bright line" test for determining whether or not a defendant's conduct constitutes gross negligence. Indeed, it appears that the Texas Supreme Court has rejected just such a "bright line" test-i.e. the Sheffield test-for one that demands more rigorous analysis: rather than simply inquiring whether the defendant exercised some care, the proper focus is on the question whether, in light of all of the surrounding circumstances, the requisite mental state is shown.
 
 
 31
 As noted supra, the Texas Supreme Court's decision in Burk Royalty was announced after the decisions of both the district court and the panel in the case sub judice. Relying upon Sheffield and decisions of this Court interpreting Sheffield, both the district court and the panel majority determined that the Maxeys' failure to prove an "entire want of care" by Freightliner was fatal to the Maxeys' claim for exemplary damages. Similarly, the district court also relied upon Sheffield for the proposition that gross negligence, to justify an award of exemplary damages, must approximate a "fixed purpose to injure." 450 F.Supp. at 963-64. In light of the Texas Supreme Court's subsequent readoption in Burk Royalty of the Shuford definition of gross negligence as the definition to be used in all gross negligence cases, and its determination that "conscious indifference" is the standard by which claims of gross negligence should be measured, we must conclude that the district court's reliance in the present case on Sheffield was misplaced.
 
 
 32
 This determination, however, does not settle the issue because it remains necessary to decide whether, under the standard of review established by this Court in Boeing, as informed by the substantive principles articulated in Burk Royalty, the jury's finding of gross negligence may be sustained. Because the parties have not yet been afforded an opportunity to argue the present case in light of Burk Royalty,[6] and for the added reason that the district court, with its superior familiarity with the case, is in a better position to decide this issue in the first instance, we remand the case to the district court for reconsideration of Freightliner's motion for judgment n. o. v. in light of Burk Royalty.[7]
 
 B. Industry Custom
 
 33
 Because we hold that it is necessary to remand this case to the district court for reconsideration in light of Burk Royalty, it is appropriate to briefly address the Maxeys' argument that, in setting aside the jury's verdict of gross negligence, the district court improperly relied upon its finding of Freightliner's compliance with industry custom. Although apparently not holding that compliance with industry custom is an absolute defense under Texas law to claims of gross negligence in all cases, the district court nonetheless quite clearly was of the opinion that Freightliner's compliance with industry custom negated any such finding in this case:
 
 
 34
 The critical circumstance is that to sustain this award one must be prepared to hold that the entire automotive and trucking industry in the United States has ... "acted intentionally or wilfully or with that degree of 'gross negligence' which approximates a fixed purpose to bring about ... injury ...."
 
 
 35
 (A)dopting a design common to all manufacturers and millions of vehicles for over thirty years is a sufficient effort at safety to preclude a finding that Freightliner acted with an intent which approximates a fixed purpose to bring about this injury.
 
 
 36
 450 F.Supp. at 964; quoting Woolard v. Mobil Pipe Line Company, 479 F.2d 557, 565 (5th Cir. 1973). In light of the fact that no evidence of other manufacturers' designs was presented to the jury, the district court's observation is somewhat curious. Similarly, it is not clear how the district court reached the conclusion that the fuel system on the Maxey truck was common to that of "the entire automotive and trucking industry in the United States." Although Freightliner elicited testimony at trial indicating that, like Freightliner, no other commercial tractor truck manufacturer located its fuel tanks between the truck rails, or used fuel bladders or fuel cut-off devices-features incorporated in the Maxeys' proposed alternative designs-the district court's reasoning overlooks the fact that the Maxeys complain of the defective nature of Freightliner's design, not Freightliner's failure to adopt the design alternatives proposed by the Maxeys' expert. Moreover, examination of the pleadings and trial transcript clearly reveals that the Maxeys complain of Freightliner's design as a whole, including, inter alia, its location of large lightweight aluminum tanks, which were likely to rupture upon impact, within one or two inches of the outermost portions of the truck body, and in close proximity to the exhaust stack.[8] The Maxeys correctly note that, even assuming that compliance with industry custom could automatically preclude a finding of gross indifference-a proposition without support in Texas law, see, e.g., Turner v. General Motors Corporation, 514 S.W.2d 497 (Tex.Civ.App.-Houston (14th Dist.) 1974, writ ref'd n. r. e.), and also assuming that the district court could make a finding on this issue, the fact remains that, notwithstanding the district court's "finding," Freightliner did not attempt to prove at trial that the overall design of the Maxey truck was common to that used by the "entire automotive and trucking industry."[9]
 
 
 37
 Of course, this Court fully agrees with the premise-implicit in the district court's reasoning-that compliance with industry custom can be relevant evidence tending to negate an inference of gross indifference. Consequently, to the extent that a defendant establishes that certain aspects of its design are common to an entire industry, such evidence may, under Boeing, be considered by the district court when ruling on a motion for judgment n. o. v. as tending to negate a jury issue of gross indifference. In making the inquiry, however, a district court must limit its consideration to evidence actually presented at trial, and must be careful not to preempt the jury's role under the seventh amendment as the sole finder of fact.[10] Finally, absent an indication by the Texas courts that compliance with industry custom constitutes a complete defense to a claim of gross negligence, such proof must, under Boeing, be considered together with all of the evidence when determining whether a jury issue of conscious indifference is raised.
 
 III. Freightliner's Cross-Appeal
 
 38
 Freightliner cross-appeals from the district court's entry of judgment on the jury's award of actual damages in the amount of $150,000 for the defective design of the fuel system on decedents' truck. In support thereof, Freightliner argues that the district court erred in setting aside the jury's finding that, by using Freightliner's product, Billy Maxey voluntarily assumed the risk of injury. With respect to exemplary damages, Freightliner argues that if the jury's finding of Freightliner's gross negligence is reinstated, the jury's verdict of $10,000,000 is clearly excessive, and should be reduced.[11]
 
 A. Assumption of the Risk
 
 39
 With respect to Freightliner's argument that Billy Maxey voluntarily assumed the risk of injury by using Freightliner's product, this Court agrees with the district court's determination that, under the relevant Texas standard as applied by the Boeing test, the jury's volenti finding is not supported by the evidence. In Henderson v. Ford Motor Company, 519 S.W.2d 87 (Tex.1975), the Texas Supreme Court emphasized that, under Texas law, "the inquiry is whether (decedent) voluntarily exposed (himself) to the risk with knowledge and appreciation of the danger." Id. at 91. It is not enough that the plaintiff be aware of the defect; "(t)here must be knowledge and appreciation of the particular danger involved so that the plaintiff proceeds to encounter the risk as the result of an intelligent choice." Ellis v. Moore, 401 S.W.2d 789, 793 (Tex.1966). As the panel stated in the case sub judice, "(c)ases in Texas on volenti or assumption of the risk are clear in requiring subjective knowledge and intelligent appreciation of the specific danger involved." 623 F.2d at 399. Accord: Green v. Edmands Co., 639 F.2d 286, 289 (5th Cir. 1981). In the present case, Freightliner made no attempt to prove that Billy or Dee Maxey possessed subjective awareness of the extent of the fire hazard that was presented by Freightliner's design. In this regard, we agree with the panel's observation that:
 
 
 40
 (T)he contention that Freightliner as a national manufacturer of truck/tractors was unaware of post-crash hazards relating to side-mounted fuel tanks, but that Billy Maxey, a truck driver and mechanic with a high school education should be charged with knowledge and appreciation of the nature and extent of the risk is unreasonable.
 
 
 41
 623 F.2d at 395. Consequently, we hold that the district court did not err in setting aside the jury's finding on the issue of assumption of the risk.
 
 B. The Exemplary Damage Award
 
 42
 With respect to its second point, Freightliner argues that if the jury's finding of gross indifference is reinstated, the jury's award of $10,000,000, which is approximately 67 times the size of the $150,000 award of actual damages to the Maxey children, is clearly excessive, and should be reduced. If anything is clear in the Texas law concerning exemplary damages, it is that exemplary damages must be "proportional," even though this does not mean there must be an exact ratio. Tynberg v. Cohen, 76 Tex. 409, 13 S.W. 315, 316-17 (Tex.1890). The court in Tynberg, in language never abandoned, continued:
 
 
 43
 (a) power such as may be exercised by juries in awarding exemplary damages is liable to great abuse,-may often lead to great oppression; and there is no class of cases in which the conservatism of the judge should more frequently find field for action.
 
 
 44
 13 S.W. at 317.
 
 
 45
 The rule has been unwavering. The most frequently cited Texas Supreme Court case of recent years on this issue is Southwestern Investment Co. v. Neeley, 452 S.W.2d 705 (Tex.1970), in which the court said "the amount of exemplary damages should be reasonably proportioned to the actual damages found." Further, the case of First Security Bank & Trust Co. v. Roach, 493 S.W.2d 612, 619 (Tex.Civ.App.1973) writ ref'd n. r. e., shows five factors, in addition to the reasonable proportionality requirement, have been distilled from prior cases to be used in evaluating whether a punitive damage award is excessive: (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties, and (5) the extent to which defendant's conduct offends a public sense of justice and propriety.
 
 
 46
 This Court has spoken just recently on the reasonable proportional relationship of punitive damages to actual damages under Texas law. In Miley v. Oppenheimer & Co., 637 F.2d 318 (5th Cir. 1981), we upheld an exemplary damage award that was approximately three times the award of compensatory damages. In doing so, the Court said:Despite the lack of guidance provided by the cited Texas case law, we are by no means forced to apply the four-part Texas test for assessing the fairness of punitive damage awards to churning cases in a vacuum. Although we do not decide what amount of punitive damages, if any, should be awarded in every intentional, business tort case, we feel that a formula of punitive damages equal to three times compensatory damages is a fairly good standard against which to assess whether a jury abused its discretion. While there is nothing magical about the three-times-compensatory-damages formula, many courts which have weighed the kind of factors which comprise the Texas four-part test in awarding punitive damages for intentional, big business torts have selected that figure.
 
 
 47
 Id. at 331.
 
 
 48
 It might be argued that a three to one relationship between punitive and actual damages in an intentional business fraud is not at all related to the proportionality required when the case involves a wrongful death. But the relationship analogy is valuable because it is well established that the purpose of punitive damages is not to compensate those who have felt the loss, but it is instead to create a deterrence to the wrongdoer. Cotton v. Cooper, 209 S.W. 135 (Tex.Cr.App.1919); Lubbock Bail Bond v. Joshua, 416 S.W.2d 523, 530 (Tex.Civ.App.1967) no writ. Thus, the amount of money damages is relevant in virtually the same way in each instance.
 
 
 49
 There is no intention to assert here that three to one is the correct proportion. The Texas Supreme Court has recently upheld a wrongful death exemplary damage award of $500,000 in a case where actual damages of approximately $25,000 were assessed. This is a 20 to 1 ratio. But this was a case of low actual damages and high culpability. In addition, it is highly relevant to the overall posture of the case that the plaintiff's son, seriously injured in the same accident, received $500,000 punitive damages on an actual damage award of $226,000, a ratio of only 2.2 to 1. Alamo National Bank v. Kraus, 616 S.W.2d 908 (Tex.1981).
 
 
 50
 It is unnecessary to evaluate this case upon all the five factors set out above. But a critical factor in evaluating the punitive damage award in this case is the showing that no other commercial tractor truck manufacturer utilized the asserted safety features incorporated in the design alternatives proposed by the Maxeys' experts. The degree of culpability of the defendant wrongdoer is one of the specific factors that is to be taken into account under the Texas law governing punitive damage awards. As a result, the wrongdoer's degree of culpability must be considered on two levels. It must be considered in order to determine whether the wrongdoer was grossly negligent. In addition, and as part of a separate consideration, it must be evaluated in order to determine the appropriate amount of the punitive damage award. While the degree of culpability of the wrongdoer in this case is perhaps sufficient to establish gross negligence under Texas law, it falls far short of justifying an award of $10 million, since the Maxeys' alternative designs were not employed by any other manufacturers.[12]
 
 
 51
 A particular defendant may not be required under Texas law to bear the burden of a punitive damage award aimed at punishing an entire industry. The proportionality requirement obviously is intended in part to stop this very kind of broad punitive motive of a single jury in a single case. As a result, the district court should circumvent a jury's attempt to discipline an entire industry by way of the industry's lone representative in a solitary lawsuit. In the case sub judice, the punitive damage award was so excessive as to warrant reversal and reduction under any conceivable interpretation of the Texas law of proportionality and culpability.
 
 
 52
 This Court, however, should not suggest the exact proportion or the exact amount of punitive damages because under Texas law this is the responsibility of the trial court. But the district court is entitled to directions from this Court that include a strong and firm disapproval of the amount of punitive damages awarded by the jury, and a reminder of the reasonable proportionality and degree of culpability requirements. Inasmuch as the Court is vacating the district court's entry of judgment n. o. v., and remanding the case for reconsideration in light of Burk Royalty, it is also appropriate to remand this issue for the district court's reconsideration in light of these directions.
 
 
 53
 For the foregoing reasons, the judgment of the district court awarding actual damages to the Maxey children is affirmed. The district court's order granting Freightliner's motion for judgment n. o. v. on the jury's finding of gross indifference is vacated and remanded to the district court for further proceedings consistent herewith.
 
 
 54
 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 
 
 55
 GARWOOD, Circuit Judge, concurring.
 
 
 56
 I join in all of the majority opinion except part II. Respecting part II, I concur in the result reached, namely a remand for reconsideration in the light of Burk Royalty Company v. Walls, 616 S.W.2d 911 (Tex.1981), but differ with the majority in that in my view it reads too much into Burk Royalty.
 
 
 57
 As Judge Gee's forceful dissent points out, and as the majority recognizes, although in a diversity case the controlling substantive law is that of the forum state, federal law nevertheless establishes the standard, scope and method of review employed by this court and the district courts in determining whether the evidence is legally sufficient to submit a case or issue to the jury. So, our proper concern with Burk Royalty is whether, and if so how, it changed the substantive law of Texas concerning gross negligence, as distinguished from its rulings respecting the proper standard, scope or method of review of the evidence to determine its legal sufficiency to support a jury finding of gross negligence.
 
 
 58
 While I agree with Judge Gee that Burk Royalty makes no express holdings repudiating prior decisions on the substantive law of gross negligence (except as regards the here-immaterial active/passive distinction), I nevertheless believe the opinion in that case does imply some clarification and qualification of the "some care" doctrine as a substantive test for determining whether a given act or course of conduct constitutes gross negligence. Hence I concur in the remand for reconsideration in the light of Burk Royalty. But I disagree with the majority in that, unlike it, I find nothing in Burk Royalty to justify the inference that the Texas Supreme Court totally repudiated or rejected the "some care" test as a matter of substantive law.
 
 
 59
 The substantive law implications of Burk Royalty are a clarification of the "some care" rule and a limitation of its literalistic or mechanical application in two interrelated respects. First, the opinion emphasizes that the "care" whose presence or total absence we are concerned with is that which reflects on the state of mind of the defendant-whether knowing the peril he had no, or had some, concern for plaintiff's safety. (616 S.W.2d at 922: "... that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care.") Second, it indicates that the presence or total absence of such care at any particular relevant time is to be judged from "all of the surrounding facts ... not just individual elements or facts ... gross negligence need not rest upon a single act or omission, but may result from a combination of negligent acts or omissions, and many circumstances and elements may be considered...." (616 S.W.2d at 922).
 
 
 60
 In other words, Burk Royalty impliedly rejects a mechanical, compartmentalized application of the "some care" rule in which the controlling legal significance of a particular element of conduct is determined without regard to the entire context of the event and as if the particular conduct occurred in isolation. For example, one would infer from Burk Royalty that a "hot-rodder" driving at night in a manner so consciously dangerous as to constitute gross negligence even if it were daytime is not to be deemed free of gross negligence merely because he has his lights on so that roadside friends can better observe his daredevil heroics. However, one would also infer that if, in the overall context of the event, the defendant does exercise some care with the intent of thereby avoiding injury to persons situated similarly to plaintiff, then he is not guilty of gross negligence notwithstanding the care is but slight and should have been far greater.
 
 
 61
 Burk Royalty's only express rejection of the "some care" rule, or of Sheffield Division, Armco Steel Corp. v. Jones, 376 S.W.2d 825 (Tex.1964), and other similar cases (apart from their approval of the active/passive distinction), is contained in the statement: "... we disapprove the use of the 'some care' test in determining legal sufficiency points and overrule those cases applying it." 916 S.W.2d at 922. This reflects a limited, not a complete, rejection of the "some care" rule and the Sheffield decision, especially when read in the context of the earlier statements in this section (entitled "Review of Gross Negligence Findings") of the Burk Royalty opinion, namely:
 
 
 62
 "The problem in the present case, however, is not so much the definition (of gross negligence) as it is the application of it. We now turn to an examination of our standard of review in cases involving jury findings of gross negligence. Burk Royalty contends here that there is no evidence of gross negligence.
 
 
 63
 "... If the jury finds gross negligence, the defendant has the burden of establishing that there is no evidence to support this finding. The 'some care' test utilized in prior workers' compensation cases improperly reverses that burden. Under the 'some care' test the defendant, instead of proving there is no evidence to support the verdict, would show there is some evidence that does not support the jury finding of gross negligence, i.e. entire want of care.... Moreover, the 'some care' test does violence to the rule for testing the legal insufficiency of the evidence which requires that only the evidence viewed in its most favorable light and tending to support the jury's finding may be considered. The jury, after all, does not have to believe that 'some care' was exercised. When there is some evidence of defendant's entire want of care and also some evidence of 'some care' by the defendant, the jury finding of gross negligence through entire want of care resolves the issue, and the appellate court is bound by the finding in testing for legal insufficiency." (616 S.W.2d at 920, 921; emphasis in original; footnote omitted.)
 
 
 64
 Certainly the inference from this language is that the principal deficiency in the "some care" test is its misuse by appellate courts to invade the broad province which Texas law gives to the jury. Moreover, the quoted language strongly suggests that if the jury does believe "some care" was exercised there would be nothing for it to "resolve," and it should find for the defendant, as then the requisite "entire want of care" would be missing. This tends to approve, not repudiate, the substantive proposition that if there is "some care" (properly understood) there cannot be an entire want of care as required for gross negligence.
 
 
 65
 The foregoing is confirmed by Burk Royalty's reliance on Missouri Pacific Ry. v. Shuford, 72 Tex. 165, 10 S.W. 408 (1888), as follows:
 
 
 66
 "In Shuford, the court again, Stayton writing, defines gross negligence:
 
 
 67
 'While, in a given case, "ordinary care" may not exist, yet there may exist at least slight care.[1] Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.' (Emphasis added.)
 
 
 68
 "Of the definitions from this period, the Shuford definition is the most cited by the Texas courts down through the years and has never been repudiated." (616 S.W.2d at 917.)
 
 
 69
 ....
 
 
 70
 "We have determined that the correct definition of gross negligence is that set out in the Shuford case." (616 S.W.2d at 920.)
 
 
 71
 The foregoing language from Shuford quoted with approval in Burk Royalty plainly means to contrast the existence of even "slight care" with "entire want of care" which is required for gross negligence, and by the clearest of inferences constitutes an affirmation of the inescapably logical proposition that if there is "some care" there cannot be an "entire want of care." That such proposition is more expressly advanced in Sheffield does not mean it is rejected in Burk Royalty ; after all, Sheffield relies heavily (and properly) on Shuford, and Shuford is expressly approved, and none of Shuford is questioned, in Burk Royalty.
 
 
 72
 The emphasis in Burk Royalty on the state of mind of the defendant is fully consistent with the foregoing. A defendant who, intending to thereby avoid injury to others, takes "some" precaution is not "indifferent" to the welfare of others; perhaps his concern is only slight and nowhere near as great as it should be, but it is not indifference. Burk Royalty states it must be shown "that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care." (616 S.W.2d at 922.) If the defendant's acts demonstrated that he had some concern, that he cared some, it cannot logically be said that "he didn't care," notwithstanding that he should have cared much more.
 
 
 73
 Accordingly, I cannot agree with the statement in the majority opinion that Burk Royalty "repudiated the rationale of Sheffield ... that there cannot be degrees of entire want of care; there is either an entire want of care or there is not. If there is any care, i.e., 'some' care, then there cannot be an entire want of care." Nothing in Burk Royalty says that a defendant, who in fact at the relevant time exercises some care, in light of all the circumstances, intending to thereby avoid injury to others, can nevertheless be guilty of gross negligence. Similarly, the majority speaks too broadly when it says that Burk Royalty "expressly rejected the 'some care' test." The only express rejection was as to the use of that test "in determining legal sufficiency points," where the Burk Royalty majority felt it previously had been improperly used to afford a broader scope of review of jury findings in certain gross negligence cases than in other cases. Insofar as Burk Royalty implies changes in the substantive law of gross negligence, these certainly do not amount to a complete rejection or abandonment of the "some care" test, as such would clearly be inconsistent with Shuford on which Burk Royalty so heavily relies. Rather, what Burk Royalty implies as to substantive law is a clarification and qualification of the "some care" rule to avoid its application in a mechanical, compartmentalized fashion.
 
 
 74
 I also find myself in disagreement with that portion of the majority opinion which suggests Burk Royalty has inferentially disapproved the proposition, based on Sheffield, "that gross negligence, to justify an award of exemplary damages, must approximate a 'fixed purpose to injure.' " I find nothing in Burk Royalty which indicates the slightest intention to make any change in the prior law insofar as concerns the degree or character of wrongfulness of state of mind required for gross negligence. To the contrary, Burk Royalty's emphasis is on wrongful state of mind as being the thing which "justifies the penal nature of the imposition of exemplary damages." (616 S.W.2d at 922; emphasis added.) Certainly Burk Royalty does not disapprove everything in Sheffield, for Sheffield largely relies on and quotes from Shuford, which Burk Royalty expressly approves. Further, it must be noted that the only authority cited by Shuford (10 S.W. 408 at 411) for its gross negligence holding (and its much quoted definition) is Cotton Press v. Bradley, 52 Tex. 587 (1880). Cotton Press is cited and quoted from, with no hint of disapproval in any respect, in Burk Royalty (616 S.W.2d at 916); and the Cotton Press language so quoted includes that describing the required "conscious indifference" as being that which "is morally criminal" and "should reach the borderline of a quasi-criminal act." Had the Texas Supreme Court in Burk Royalty intended to change the substantive law of gross negligence by watering down the required wrongfulness of the defendant's state of mind the opinion would surely have said so. It does not. This court should not do so in its place.
 
 
 75
 Finally, the majority opinion, citing only Turner v. General Motors Corporation, 514 S.W.2d 497 (Tex.Civ.App.1974, n. r. e.), implies that Texas courts have held that compliance with industry custom in respect to the complained of conduct does not necessarily preclude a finding that the industry member is grossly negligent in such regard. As the majority opinion holds there is no evidence, nor any jury finding, that the defendant here complied with industry custom, it would not appear necessary to address the issue. If it is to be addressed, I believe it should be pointed out that in Turner the suit was on simple negligence (and strict liability), and the opinion does not even mention gross negligence. For its industry custom holding (514 S.W.2d at 506, 507), Turner relies solely on Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863 (Tex.1961). Brown, like Turner, deals only with ordinary negligence and makes no mention of gross negligence. Since gross negligence, unlike simple negligence, requires an entire want of care and a consciously wrongful state of mind, holdings in ordinary negligence cases are not necessarily controlling. I am aware of no Texas case which holds that an industry member may be found grossly negligent on account of conduct which is taken in knowing compliance with industry custom. Certainly nothing in Burk Royalty touches on this point. The more accurate statement would be that Texas courts have not authoritatively spoken to the effect in gross negligence cases of an industry member's compliance with industry custom in respect to the complained of conduct.
 
 
 76
 While I was privileged to sit on the Texas Supreme Court when the writ of error was granted in Burk Royalty and thereafter when the case was argued, though not when the opinion was handed down, I plead no special competence on such account. I believe a fair reading of the opinions in Burk Royalty does not justify certain of the interpretations which the majority has given to that decision. The majority finds more in it than is either expressly supported by or reasonably inferable from the text.
 
 
 77
 GEE, Circuit Judge, with whom RONEY, TJOFLAT, RUBIN, VANCE, POLITZ and RANDALL, Circuit Judges, join, dissenting:
 
 
 78
 Relying on settled Texas substantive law and federal procedural law equally well established, the district court correctly held, in this diversity case, that the record evidence did not support a jury finding of gross negligence. Our panel affirmed. In order for today's en banc majority to achieve its reversal of both, therefore, it was necessary for it to find an authority altering these precedents. In my view, it mistakenly believes that it has done so in Burk Royalty Co. v. Walls, 616 S.W.2d 911 (Tex.1981), a decision handed down after the panel decision. As I shall attempt to demonstrate, that opinion endorsed and reaffirmed the Texas substantive law upon which our trial court proceeded and furnishes no occasion for reversing its judgment. The sole innovation of Burk Royalty is one immaterial to this appeal: an alteration in state appellate procedures that does not and could not affect ours in any manner.
 
 
 79
 For all purposes relevant here, Texas courts are the masters of Texas substantive law: where they lay it down we must follow. State courts-even those of Texas-are not, however, at liberty to alter federal appellate procedures or to overrule our en banc decision in Boeing v. Shipman, 411 F.2d 365 (5th Cir. 1969) (en banc).[1] Because Burk Royalty changed only the Texas standard for appellate review of gross negligence findings and not Texas substantive law; because, under Erie, that change is irrelevant to our dispositions; and because the majority opinion can only turn, despite its disavowals, on a mistaken view that Burk Royalty, a Texas decision, affects-or could affect-our mode of procedural review of such matters, I respectfully dissent from the court's remand.
 
 
 80
 I. Texas Law Before Burk Royalty.
 
 
 81
 Before Burk Royalty, "some care" was both a substantive defense under the gross negligence law of Texas and a procedural feature of (state) appellate review in such cases. That a showing of "some care" is a complete defense to a claim of gross negligence was and is thought by Texas courts to be necessarily implied by the Shuford definition of gross negligence:
 
 
 82
 While, in a given case, "ordinary care" may not exist, yet there may exist at least slight care. Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.
 
 
 83
 Missouri Pacific Railway Co. v. Shuford, 72 Tex. 165, 10 S.W. 408, 411 (1888) (emphasis added) (citation omitted). Under this definition, where the trier of fact finds slight or "some care," the requisite "entire want of care" is necessarily lacking, and a corollary finding of gross negligence-defined as an entire want of care-is logically impossible. Such was and is the substantive law of Texas: "We have determined that the correct definition of gross negligence is that set out in the Shuford case." Burk Royalty Co. v. Walls, 616 S.W.2d at 920.
 
 
 84
 A cognate procedural rule developed in Texas as to appellate review of verdicts in gross negligence cases. In time past, Texas appellate courts, finding record evidence of "some care," refused to sustain verdicts of gross negligence. See, e.g., Loyd Electric Co. v. DeHoyos, 409 S.W.2d 893, 896 (Tex.Civ.App.-San Antonio 1966, writ ref'd). Logically, this mode of review was an anomaly in Texas appellate procedure, since it long has been and now is the general Texas rule that in reviewing the sufficiency of evidence to support, as a matter of law, a jury verdict-the so-called "no evidence" issue-Texas appellate courts consider "only the evidence viewed in its most favorable light and tending to support the jury's finding ...." Burk Royalty Co. v. Walls, 616 S.W.2d at 921.[2] It was this anomaly, and it only, that the Texas Supreme Court disposed of in Burk Royalty.
 
 
 85
 II. The Holdings of Burk Royalty.
 
 
 86
 Burk Royalty reaffirmed the substantive definition of Shuford, id. at 920, but struck down the "some care" procedural rule, substituting the standard Texas "no evidence" mode of review, id. at 922.[3] In so doing, it simply held that in reviewing the sufficiency of evidence to support a jury verdict of gross negligence Texas courts should look only to evidence indicating "defendant's entire want of care" and disregard all evidence showing "some care." Id. at 921.[4]
 
 
 87
 The majority opinion therefore sweeps too broadly when it declares that Burk Royalty "rejected the 'some care' test theretofore often applied by Texas courts in gross negligence cases," maj. op. at 1371, implying that both the substantive "some care" defense and the cognate procedural rule were disavowed in Burk Royalty. The Burk Royalty court carefully held that "we disapprove the use of the 'some care' test in determining legal sufficiency points." 616 S.W.2d at 922 (emphasis added). "Some care" was, however, necessarily preserved as a substantive defense to gross negligence by the Texas definition of gross negligence reaffirmed in Burk Royalty. See id. at 920.
 
 
 88
 The test that the majority opinion embraces as the "new" substantive test for gross negligence in Texas, maj. op. at 1374, is not new at all. A century old, it is to be found both in Shuford and in Sheffield. Compare 616 S.W.2d at 922 with 376 S.W.2d at 828-29 and 10 S.W. at 410-11. In addition, the majority opinion erroneously asserts that Burk Royalty "repudiated the rationale of Sheffield ... that 'there cannot be degrees of entire want of care; there is either an entire want of care, or there is not. If there is any care, i.e., " some care," then there cannot be an entire want of care.' (616 S.W.2d) at 918." Maj. op. at 1374 (original emphasis). Here the majority is clearly mistaken, for this is not merely "the rationale of Sheffield"; instead, it is the rationale of Shuford as well, the decision explicitly reaffirmed by the Texas court in Burk Royalty. The sole passage to this effect in Sheffield is a quotation from Shuford :
 
 As said in Shuford, supra:
 
 89
 " * * * There can be no partial exercise of 'ordinary care.' It exists, as a degree, in completeness, or it is totally wanting in any given case. While in a given case, 'ordinary care' may not exist, yet there may exist at least slight care. * * * "
 
 
 90
 Sheffield, 376 S.W.2d at 829. And here again, it seems plain, the majority opinion overstates the holdings of Burk Royalty. Burk Royalty repudiates that rationale only insofar as it is to be applied as a standard of review by Texas appellate courts. We are not such a court.
 
 
 91
 Where the majority becomes confused is in its attempt to reconcile the action of the Burk Royalty court in reaffirming Shuford while overruling Sheffield, despite the fact that Sheffield cited and relied on Shuford-announcing that its treatment of gross negligence was correct substantive law:
 
 
 92
 There is no question here as to the rule of law applicable to cases of this character where exemplary damages are sought. In one of the later expressions by this court, Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709, we reaffirmed the definition stated in Missouri Pacific Ry. v. Shuford, 72 Tex. 165, 10 S.W. 408, namely that:
 
 
 93
 "Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." (Emphasis added).
 
 
 94
 Sheffield, 376 S.W.2d at 828. Struggling to find somewhere in Burk Royalty a change in Texas substantive law upon which to base its reversal of the trial court, the majority writes:
 
 
 95
 (I)t is readily apparent that the court in Burk Royalty did not undertake to establish a "bright line" test for determining whether or not a defendant's conduct constitutes gross negligence. Indeed, it appears that the Texas Supreme Court has rejected just such a "bright line" test-i.e. the Sheffield test-for one that demands more rigorous analysis: rather than simply inquiring whether the defendant exercised some care, the proper focus is on the question whether, in light of all of the surrounding circumstances, the requisite mental state is shown.
 
 
 96
 Maj. op. at 1374. There is, however, nothing new at all in this ultimate focus on the defendant's state of mind; it and the inquiry whether some care at least was exercised by defendant for the plaintiff's safety are merely two ways of saying the same thing, and both are as old as Shuford. Immediately following the definition of gross negligence quoted above, the Sheffield court quoted from Bennett v. Howard, itself quoting a standard Texas text, as follows:
 
 
 97
 " 'In order that a recovery of exemplary damages may be sustained, the plaintiff must show, not merely that the defendant could have or ought to have foreseen and prevented the loss or injury of which the plaintiff complains, but that he acted intentionally or wilfully, or with a degree of "gross negligence" which approximates a fixed purpose to bring about the injury of which the plaintiff complains. The mental factor is also described in the reports by the terms "malice," "fraud," "oppression," "recklessness," and the like. Regardless of the expression which is used to describe it, the purpose or intention of the defendant is determinative of his liability for exemplary damages.' "
 
 
 98
 Sheffield, 376 S.W.2d at 828, quoting Bennett v. Howard, 170 S.W.2d at 712, quoting 13 Tex.Jur. § 113 at 241 (emphasis added).
 
 
 99
 It is thus plain beyond peradventure that both the district court and our panel correctly relied upon the substantive "some care" rule of Sheffield, reaffirmed in Burk Royalty, see 616 S.W.2d at 920. Sheffield replicated its definition of gross negligence directly from Shuford. See 376 S.W.2d at 828-29. Burk Royalty reaffirms Shuford : every element in the definition of gross negligence found in Burk Royalty is present in Shuford's and Sheffield's definition as well. Compare 616 S.W.2d at 920 with 10 S.W. at 410-11 and 376 S.W.2d at 828-29, 32. For all purposes of this case, the Shuford-Sheffield and Burk Royalty definitions are identical;[5] and the majority's attempt to divide their unitary position as to substantive law entirely fails. The plain and simple explanation, that they differ as to state appellate procedure and that it is this aspect of Sheffield only that is disapproved by Burk Royalty, will not serve the majority's purposes and so is cast aside.
 
 
 100
 The district court therefore correctly relied on Sheffield for its definition of gross negligence, taking a quote from Sheffield that comes directly from Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709 (1943) (cited with approval in Burk Royalty, 616 S.W.2d at 920). See 450 F.Supp. at 963, quoting 376 S.W.2d at 828, quoting 170 S.W.2d at 712. The panel opinion, in turn, correctly followed Boeing on procedure, see 623 F.2d at 397-99, and Shuford-Sheffield on substantive Texas law, see id. at 398.[6]
 
 
 101
 Since Sheffield is still good law for the points relied on by the district court and our panel, there is no occasion for a remand in light of Burk Royalty. Indeed, one can only wonder what it is that the majority expects the district court to do on the remand that it mandates. That able court has already once applied the correct Texas substantive law-the 100-year-old Shuford-Sheffield test explicitly reaffirmed in Burk Royalty. 450 F.Supp. at 963. Does the majority mean to hold, in defiance of Burk Royalty, that a different test should now obtain? The district court has likewise already once applied the correct federal procedural law, that of Boeing v. Shipman. So doing, and looking to all of the evidence, it concluded-unimpeachably, in my view-that "adopting a design common to all manufacturers and millions of vehicles for over thirty years (as Freightliner undisputedly did) is a sufficient effort at safety to preclude a finding that Freightliner acted with an intent which approximates a fixed purpose to bring about this injury." Id. at 964. Would the majority adopt the Texas rule of appellate review, expressed in Burk Royalty, and abandon sub silentio our landmark precedent of Boeing v. Shipman ? I doubt that the majority would answer "yes" to either rhetorical question.
 
 
 102
 Thus, the majority simply directs the district court to do again what it has already done, in the same manner and by the same standards. The majority has prevailed as to the result and will have its way; unfortunately, it has been unable to enunciate a course of reasoning which supports that result. Its treatment of Texas authority reflects more conviction than analysis; and its mandate floats in the air, supported by the power of numbers only. Proceedings on remand should be short and simple.[7]
 
 JAMES C. HILL, Circuit Judge, dissenting:
 
 103
 I concur fully in the dissenting opinion authored by Judge Gee. I offer the following additional comments.
 
 
 104
 We have been misled into a tunnel vision concentration on how the Texas appellate courts have treated evidence of "some care," and have been diverted from the facts necessary to a finding of gross negligence sufficient to an award of punitive damages. Whatever Burk Royalty Co. v. Walls, 616 S.W.2d 911 (Tex.1981) did to the "some care" rule, it did not alter standards long set for determining the nature of conduct which authorizes punitive damages.
 
 
 105
 Before we determine whether or not evidence of "some care" removes proven conduct from supporting punitive damages, we ought to decide whether or not the conduct, with "some care" present or absent, fit the Texas definition of gross negligence. The district court found that the proven conduct of the defendant did not measure up. It did not "raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." Missouri Pacific Ry. v. Shuford, 72 Tex. 165, 10 S.W. 408. I agree with the district court.
 
 
 106
 Our majority, having authoritatively disputed the district court's judgment that punitive damages were not authorized gives evidence of some misgivings. It remands the cross-appeal issue-excessiveness of the punitive damage award-also. The district court has already considered this issue and decided it. If punitive damages were authorized, the district court would find $10,000,000 not to be excessive.
 
 
 107
 Punitive damages are designed to deter the wrongdoer from repeating the wrong. Our majority says that there may be sufficient evidence of gross misconduct here to authorize the court to take action sufficient to bring it to an end. That is, an entire industry must be persuaded to quit making commercial trailer-hauling tractors as they have made them heretofore. Accepting the seriousness of our majority's view of the proven conduct, I find it impossible to conclude, as a matter of law, that any lesser sum would suffice. Perhaps we are creating a new level of conduct which might be called "slight gross negligence" which authorizes "somewhat punitive damages."
 
 
 
 *
 Former Fifth Circuit case, Section 9(1) of Public Law 96-452-October 14, 1980
 
 
 **
 Judge Robert A. Ainsworth, Jr., was a member of the Court who participated in consideration of this case en banc, but his death occurred before the case was decided. Judge Thomas M. Reavley recused himself and did not participate in the consideration of this case
 
 
 [1]
 Plaintiffs are Frank Maxey and Mary Maxey, grandparents and next friends of Mary Kathryn Maxey, age twelve, and Carroll Kaylene Maxey, age nine, children of the decedents
 
 
 [2]
 Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)
 
 
 [3]
 The jury awarded no damages to Billy Maxey's parents
 
 
 [4]
 The district court in the present case rejected Freightliner's argument that, as a matter of law, exemplary damages are not available in products liability cases in Texas. The court noted that Freightliner failed to offer any authority, decisional or otherwise, in support of such a rule and noted that "(a)t the least, the availability of exemplary damages in strict liability cases is an open question." 450 F.Supp. at 961. Moreover, the court noted that the only Texas case to squarely address the issue, Heil Co. v. Grant, 534 S.W.2d 916, 926 (Tex.Civ.App.-Tyler 1976), writ ref'd n. r. e., expressly stated that:
 We believe that exemplary damages may be recovered under (Tex.Const. art. 16, section 26) in a strict liability action for the death of the user of a defective product.
 Although opining that the above-quoted statement in Heil was dicta, and therefore not binding under the rule of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the district court in the case sub judice concluded that nothing in Texas law would justify recognition of an automatic bar to awards of exemplary damages in all products liability cases. Absent some reason to believe that the Texas courts, when presented with the question, will erect such a bar to the recovery of exemplary damages, which otherwise are guaranteed by the Texas Constitution, this Court is reluctant to do so. Consequently, we find no reason to disturb the district court's conclusion that "(i)n sum, simultaneous pursuit of actual damages bottomed on principles of strict liability and exemplary damages bottomed on fault concepts are essentially matters of trial efficiency and presents no true substantive issues." 450 F.Supp. at 962.
 
 
 [5]
 The court noted that, under this approach
 (t)he burden is thus shifted to the plaintiff to negate the existence of some care. This is almost an impossible task since anything may amount to some care.
 
 
 [616]
 S.W.2d at 911
 
 
 [6]
 The Court voted to decide this case en banc without oral argument
 
 
 [7]
 Of course, to the extent that the principles announced by the Texas Supreme Court in Burk Royalty conflict with the principles announced in Boeing governing directed verdicts and judgments n. o. v. in federal diversity trials, they are binding on neither this Court nor the district court. Federal courts in this Circuit sitting under diversity jurisdiction do not look to state rules governing the standard of review of jury findings, but rather are bound by the principles established in Boeing. See Boeing, 411 F.2d at 368. The extent to which such a conflict may be present in the case sub judice is a matter upon which the district court on remand may wish to hear argument
 Freightliner, however, strenuously argues that the Texas Supreme Court's decision in Burk Royalty is of no relevance to the case sub judice, because it is clear from that opinion that the court addressed therein only the rules applicable to reviewing directed verdicts and judgment n. o. v. in Texas courts, an issue which, under Boeing, is of no concern to this Court. Consequently, Freightliner argues that this Court should affirm the decision of the district court on this issue. This Court, however, does not see the issue as so simply decided. Freightliner's argument fails to recognize that if the Texas Supreme Court's rejection in Burk Royalty of the "some care" test is strictly and solely a matter of Texas procedural law, which is not binding on this Court, then, a fortiori, the "some care" test itself is a principle that this Court is not, and never was, Erie bound to apply. Although this conclusion may be correct, we simply note that numerous decisions of this Court, as well as those of district courts (including both the panel and the district court in the present case) have relied upon the Sheffield rule as the controlling statement of the Texas law of gross negligence. For example, the district court in the present case manifested its understanding of the applicable principles as follows:
 The inquiry is whether there is that complete absence of care as required by the Texas Supreme Court in Sheffield Division, Armco Steel Corp. v. Jones, 376 S.W.2d 825, 828 (Tex.1964) ....
 
 
 [450]
 F.Supp. at 963. Similarly, this Court stated in Hernandez v. Smith, 552 F.2d 142, 145 (5th Cir. 1977): "Under Texas law, there cannot be that 'conscious indifference' to the welfare of others constituting gross negligence for purposes of exemplary damages if it is shown that defendant exercised even 'slight' care," citing Ballenger v. Mobil Oil Corp., 488 F.2d 707 (5th Cir. 1974), cert. denied, 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763. See also Woolard v. Mobil Pipe Line Co., 479 F.2d 557, 565 (5th Cir. 1973)
 
 
 [8]
 For example, the Maxeys' design expert testified that if it were impractical to locate the fuel tanks in a place other than outside of the frame rails, which was an "anticipated impact area," the lightweight aluminum used in the tanks on the Maxey truck was "inadequate," and a stronger material should have been used. T. 359, 362
 
 
 [9]
 Indeed, Freightliner's Corporate Service Manager testified that Freightliner itself had once manufactured a truck with the fuel tank mounted directly above the frame rails-a feature similar to one of the Maxeys' proposed designs. T. 236. Similarly, Freightliner's witnesses testified that Freightliner manufactured and marketed both aluminum and steel fuel tanks in its trucks, T. 248, and that a variety of tank sizes were offered. T. 665-67. As noted supra, a principal criticism by the Maxeys' expert of the Freightliner design was the use of large lightweight aluminum tanks. See note 8, supra
 With respect to the district court's reference to the automobile industry, we simply note that it requires no special knowledge of automobile construction to recognize that the use of large, unshielded, side-mounted fuel tanks is not a design common to the domestic automobile industry. Indeed, particularly noteworthy is the fact that the only evidence of industry custom promulgated by an established industrial organization-an industry standard adopted by the Society of Automotive Engineers (SAE) in 1955, and by the Bureau of Motor Carrier Safety-requiring a gasoline tank to be capable of withstanding a 30-foot drop onto concrete without spillage, was excluded by the district court. T. 266-70.
 
 
 [10]
 The special interrogatories submitted to the jury did not contain an issue on industry custom
 
 
 [11]
 Freightliner also argues that the evidence presented at trial was insufficient to support the Maxeys' recovery on the theory of strict products liability. Without repeating the evidence presented by plaintiffs in support of their claim that the fuel system on the Maxey truck was defectively designed, we note our agreement with the district court and panel that the evidence was sufficient to take this issue to the jury. See 623 F.2d at 399-400
 
 
 [12]
 As has been noted, Freightliner did not attempt to prove at trial that the overall design of the Maxey truck was common to that used by the entire automotive and trucking industry. No evidence of other manufacturers' designs was presented to the jury
 
 
 [1]
 As the quotation appears in the Burk Royalty opinion there is an ellipsis, to show omitted language, between the words "slight care" and "Gross negligence"; actually, however, there is no omitted language, and the correct quotation is as here set out. See 10 S.W. 408 at 411
 
 
 [1]
 The rule of Boeing is that, in passing on the sufficiency of evidence to support a factfinding, we look to and balance all of the record evidence. The Texas Supreme Court, by contrast, looks exclusively to evidence supporting such a finding and disregards all to the contrary
 
 
 [2]
 A different state rule applies to so-called preponderance of the evidence review. Exclusive jurisdiction of those questions is, under the Texas system, lodged in the state intermediate appellate courts, however, and the Texas Supreme Court did not and could not have concerned itself with such questions in Burk Royalty. It had no power to do so. See Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960)
 
 
 [3]
 Justice Sears McGee succinctly and accurately described the key holdings of Burk Royalty : "The majority after full consideration holds that the definition of gross negligence as reaffirmed by this Court in Sheffield is correct.... (But i)t is held that the reviewing court should apply the 'no evidence' test." 616 S.W.2d at 927 (McGee, J., dissenting)
 
 
 [4]
 It thus appears that now in Texas, since all evidence of care will be disregarded by the reviewing court and only that of its want considered, factfindings of "gross" negligence will be tested there by the same standards as those of "ordinary" negligence. Perhaps the matter will be clarified by the Texas courts; but as things now stand, under Burk Royalty it seems that only evidence tending to show "no care" at all will there be considered on review of such factfindings. Thus Burk Royalty's innovation, though seemingly a minor one, may have large consequences
 
 
 [5]
 One minor difference does exist but is not at issue today. Burk Royalty disapproved the arcane distinction between passive and active conduct of the tortfeasor, an element of the Sheffield definition of gross negligence. See 616 S.W.2d at 922. But this divergence is irrelevant here, since the district court did not charge this element of the Sheffield definition
 
 
 [6]
 The majority opinion at n.7 claims that some of our prior panel decisions have used the procedural "some care" test despite Boeing. If so, that usage was erroneous, as contravening an en banc decision of our court. A closer examination of those cases reveals, however, that this is not so. Hernandez relied on Ballenger for its definition of Texas substantive law. See 552 F.2d at 145. In turn, Ballenger consulted Sheffield, and its quotation of Sheffield is derived from Shuford. See 488 F.2d at 710, quoting 376 S.W.2d at 829, quoting 10 S.W. at 410-11. Procedurally, Hernandez reviewed all the evidence, as Boeing requires, see 552 F.2d at 146, as did Ballenger, see 488 F.2d at 711-13. Woolard correctly applied Boeing in reviewing all the evidence, see 479 F.2d at 566, and quoted Sheffield quoting Shuford on substantive Texas law, see id. at 564, quoting 376 S.W.2d at 828, quoting 10 S.W. at 411
 
 
 [7]
 I do agree with the majority's treatment of the exemplary damages point and, to that extent only, concur