**CHRYSLER CREDIT CORPORATION, A Corporation, Plaintiff,**

v.

**J. TRUETT PAYNE COMPANY, INC., etc., et al., Defendants-Third Party Plaintiffs-Appellees,**

v.

**CHRYSLER MOTORS CORPORATION, A Corporation, Third Party Defendant-Additional Party Defendant-Appellant.**

**No. 77–2331.**

United States Court of Appeals, Fifth Circuit.*

March 19, 1982.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

J. Ross Forman, III, J. Fredric Ingram, Birmingham, Ala., for third-party defendant-additional party defendant-appellant.

C. Lee Reeves, Birmingham, Ala., for defendants-third party plaintiffs-appellees.

Before GODBOLD, Chief Judge, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

This is an appeal from a treble damages judgment in favor of third party plaintiff J. Truett Payne Company against third party defendant Chrysler Motors Corporation for unlawful price discrimination. Payne alleged that it was entitled to recover damages under Section 4 of the Clayton Act because Chrysler had violated Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act. 15 U.S.C.A. §§ 13(a), 15.[1]

In an earlier opinion we reversed the judgment and ordered the district court to enter judgment for Chrysler. *Chrysler Credit Corp. v. J. Truett Payne Inc.*, 607 F.2d 1133 (5th Cir. 1979). On appeal from our ruling, the United States Supreme Court vacated the order and remanded the case for further proceedings. *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981).

J. Truett Payne Company alleged that, as a result of certain discriminatory sales incentive programs conducted by Chrysler Motors among its dealerships in the Birmingham area, it had been forced to pay higher prices for Chrysler automobiles than had its competitors. Payne claimed that because of the higher prices it lost sales and profits and was eventually forced out of business. In our initial review of the case we found it unnecessary to consider whether Payne proved that Chrysler violated the Robinson-Patman Act because we determined that Payne failed to introduce substantial evidence of injury attributable to Chrysler's alleged price discrimination, much less substantial evidence as to the amount of the alleged damages. We held that the district court erred in denying Chrysler's motion for directed verdict and motion for judgment notwithstanding the verdict.

We recognized that price discrimination which threatens competition but which has not caused any actual competitive injury may be held to violate Section 2(a) even though it will not support an action for damages. 607 F.2d at 1137; *see, e.g., M.C. Manufacturing Co. v. Texas Foundries, Inc.*, 517 F.2d 1059, 1066 (5th Cir. 1975), *cert. denied*, 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976); Areeda, *Antitrust Violations Without Damage Recoveries*, 89 Harv.L.Rev. 1127 (1976). We stated that "Even assuming that [we could infer a violation from the fact of the price differentials alleged] it is of no help to Payne. In order to recover damages, Payne had to show more than just a threat of antitrust injury." *Id.* We concluded that the unsupported testimony of injury and damages from the plaintiff's owner, J. Truett Payne, and the conclusory statements to the same effect by the plaintiff's expert witness were insufficient to allow the case to go to the jury under the standard for directed verdict and judgment notwithstanding the verdict announced in *Boeing Co. v. Shipman*, 411 F.2d 365, 373–77 (5th Cir. 1969) (en banc). Relying on the Supreme Court's holding in *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50

---

1. Section 4 of the Clayton Act, 15 U.S.C.A. § 15, provides:

   Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover three-fold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

   Section 2(a) of the Robinson-Patman Act, 15 U.S.C.A. § 13(a), provides in pertinent part:

   It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy or prevent competition with any person who either grants or knowingly receives the benefits of such discrimination, or with customers of either of them....

L.Ed.2d 701 (1977) (damages may not be presumed from the mere violation of § 7 of the Clayton Act), we declined to follow the "automatic damages" concept suggested by other courts. 607 F.2d at 1136. *See, e.g., Fowler Manufacturing Co. v. Gorlick,* 415 F.2d 1248 (9th Cir. 1969), *cert. denied,* 396 U.S. 1012, 90 S.Ct. 571, 24 L.Ed.2d 503 (1970). In addition we concluded that even under the less severe burden for proving damages in an antitrust action as announced in *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264, 66 S.Ct. 574, 579, 90 L.Ed. 652 (1946), and *Story Parchment Co. v. Paterson Parchment Co.,* 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931), the plaintiff's "showing was clearly not such as to allow the case to go to the jury." 607 F.2d at 1137.

In its review of this case the Supreme Court agreed that the jury should not be permitted to infer "the requisite injury and damage from a showing of substantial price discrimination." 451 U.S. 557, 101 S.Ct. 1923, at 1927, 68 L.Ed.2d 442. The Court also rejected the plaintiff's claim for "automatic damages" on the basis of its holding in *Brunswick v. Pueblo Bowl-O-Mat, supra.* "To recover treble damages, then, a plaintiff must make some showing of actual injury attributable to something the antitrust laws were designed to prevent.... It must prove more than a violation of § 2(a), since such proof establishes only that injury *may* result." 451 U.S. at 562, 101 S.Ct. at 1927. In discussing the lenient damages rules developed for antitrust recovery, the Court characterized the plaintiff's evidence as "weak" even under the relaxed standard. *Zenith Radio Corp. v. Hazeltine Research,* 395 U.S. 100, 123–24, 89 S.Ct. 1562, 1576–77, 23 L.Ed.2d 129 (1969); *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264, 66 S.Ct. 574, 579, 90 L.Ed. 652 (1946); *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 377–79, 47 S.Ct. 400, 404–05, 71 L.Ed. 684 (1927); *Story Parchment Co. v. Paterson Parch-*

*ment Co.,* 282 U.S. 555, 561–66, 51 S.Ct. 248, 250–52, 75 L.Ed. 544 (1931). More fundamentally, however, the Court found that the cases relied upon by the plaintiff "all depend in greater or lesser part on the inequity of a wrongdoer defeating the recovery of damages against him by insisting upon a rigorous standard of proof." 451 U.S. at 568, 101 S.Ct. at 1930. As a result the majority of the Court declined to apply this standard, absent a determination by this Court that the plaintiff had in fact made out a sufficient Section 2(a) violation by the defendant. The Supreme Court determined that "the proper course is to remand the case so that the Court of Appeals may pass upon respondent's contention that the evidence adduced at trial was insufficient to support a finding of violation of the Robinson-Patman Act.... If the court determines on remand that respondent did violate the Act, the court should then consider the sufficiency of petitioner's evidence of injury in light of the cases discussed above." *Id.*

Upon remand we directed the parties to file supplemental briefs containing specific references to the evidence in the record. After reviewing the proceedings, the record, and the arguments of the parties we conclude that plaintiff J. Truett Payne Company did not introduce sufficient evidence of either violation, injury, or damages to withstand the defendant's motions.

*I. Payne's Price Discrimination Allegations.*

From January 1970 through August 1974, the period at issue, Chrysler Motors Corporation was a wholly owned subsidiary of Chrysler Corporation, engaged in wholesaling Chrysler-Plymouth automobiles to retail dealerships throughout the country. J. Truett Payne Company, Inc., was one of four Chrysler dealerships in the Birmingham, Alabama, area.[2]

**2.** Payne went out of business in May 1974. In September 1974 Chrysler Credit Corporation filed suit for the recovery of certain unrepaid loans. Part of Payne's response was the filing of this price discrimination suit against Chrysler Motors. The district court severed trial of the price discrimination suit from trial of the Chrysler Credit issues.

From December 1970 through May 1974 Chrysler offered nineteen sales incentive programs to its Birmingham dealers. The incentive programs were identical in design to programs offered to all other Chrysler dealers in the United States, and similar to programs offered by other automobile manufacturers. The programs were of two basic types—"straight retail" and "wholesale-retail." Under the straight retail programs dealers were paid a bonus for sales in excess of a retail sales objective, set by Chrysler on the basis of the dealer's own sales during a prior period in which market conditions were similar. Under the wholesale-retail programs each dealer had to purchase a specific stock of automobiles in order to participate. After the dealer purchased the requisite number, it was paid a bonus for every car sold out of the qualifying stock. The amount of the bonuses depended on the number of retail sales, or wholesale purchases, in excess of the dealer's objective.

The purpose of these programs was to stimulate sales of Chrysler and Plymouth automobiles. Chrysler clearly sought to give each dealer a greater incentive to sell more cars. So that each dealer could participate on reasonably equivalent terms Chrysler attempted to set the objectives according to each dealer's own purchase and sales capacity. Under the straight retail programs Chrysler encouraged dealers to meet or exceed their prior sales performance. Under the wholesale-retail programs Chrysler encouraged dealers to stock sufficient inventory in order to attract purchasers, and to a lesser degree to allow Chrysler to maintain an efficient production schedule. Chrysler divided purchase objectives among its dealers under the wholesale-retail programs by factoring in each dealer's relative sales performance along with the market strength of each dealer's location. Because Payne was the long-time dominant dealer in the Birmingham area, its quotas were usually higher under both types of programs.

To the extent that Payne failed to meet a number of its objectives, and other dealers were able to meet theirs, Payne received relatively fewer bonuses. Over the relevant period of the suit, no dealer remained the consistent top performer; Payne itself was the highest performer in a number of the bonus programs during the period. In the thirteen programs of which Payne complained, however, the difference in bonus payments between Payne and the highest dealer in each program totaled $81,248. Payne alleged that this disparity in bonus payments constituted price discrimination which substantially lessened competition in the Birmingham area. Payne claimed that because of the higher prices it lost sales and profits, and was eventually forced out of business. In defense, Chrysler maintained that the sales incentive programs were available to all the Birmingham dealers on a nondiscriminatory basis and denied that they had any adverse effect on competition or that they injured Payne.

Testimony was taken for six days. Chrysler's motions for a directed verdict made at the close of Payne's case and at the close of all evidence were denied. The jury reached a verdict and awarded Payne $111,247.48, which the court trebled.[3] Chrysler's motion for judgment notwithstanding the verdict or for a new trial was denied and Chrysler appealed.

## II. The Alleged Violation of the Robinson-Patman Act.

■ It is well established that, in order to recover treble damages under Section 4 of the Clayton Act, a plaintiff must prove (1) a violation of the antitrust laws, (2) cognizable injury attributable to the violation, and (3) at least the approximate amount of the damage. *Malcolm v. Marathon Oil Co.,* 642 F.2d 845, 852 (5th Cir. 1981); *Larry R. George Sales Co. v. Cool Attic Corp.,* 587 F.2d 266, 270 (5th Cir. 1979); *Kestenbaum v. Falstaff Brewing Corp.,* 514 F.2d 690, 694 (5th Cir. 1975), *cert.*

**3.** Payne asked for $180,000, claiming that the alleged price discrimination amounted to $81,248 and that the going concern value of the business as of May 1974 ranged between $50,000 and $170,000.

denied, 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976); Terrell v. Household Goods Carriers' Bureau, 494 F.2d 16, 20 (5th Cir.), cert. dismissed, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974). The antitrust violation alleged in this case was unlawful price discrimination affecting secondary line competition, that is, price discrimination by the seller which affects competition among its buyers. See International Air Industries, Inc. v. American Excelsior Co., 517 F.2d 714, 720 n.11 (5th Cir. 1975), cert. denied, 424 U.S. 943, 96 S.Ct. 1411, 47 L.Ed.2d 349 (1976). In the context of secondary line competition, Section 2(a) prohibits price discrimination between different purchasers of commodities of like grade and quality "where the effect of such discrimination may be substantially to lessen competition ... or to injure, destroy, or prevent competition" among the purchasers. 15 U.S.C.A. § 13(a); International Air Industries, Inc. v. American Excelsior Co., supra, 517 F.2d at 720–21.

■ The reasonable possibility of substantially lessening competition has been interpreted in this Circuit as requiring the plaintiff to prove that the result of the price discrimination "is likely to be a severe, adverse effect on competition." Littlejohn v. Shell Oil Co., 483 F.2d 1140, 1144 (5th Cir. 1973) (en banc); Lehrman v. Gulf Oil Corp., 464 F.2d 26, 36–37 (5th Cir.), cert. denied, 409 U.S. 1077, 93 S.Ct. 687, 34 L.Ed.2d 665 (1972). In order to show a violation of Section 2(a) of the Robinson-Patman Act a plaintiff must demonstrate that the likely effect of the alleged price discrimination was to allow a favored competitor to draw significant sales or profits away from him, the disfavored competitor. See Littlejohn v. Shell Oil Co., supra; Enterprise Industries v. Texas Co., 240 F.2d 457, 458 (2d Cir.), cert. denied, 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957).

Courts must be careful in each case to distinguish between price differences which cause anticompetitive effects and those which reflect "a desirable response to competition and considerations of efficiency." Cooper, Price Discrimination Law and Economic Efficiency, 75 Mich.L.Rev. 962, 969 (1977). As the Supreme Court stated in FTC v. Sun Oil Co., 371 U.S. 505, 527, 83 S.Ct. 358, 370–71, 9 L.Ed.2d 466 (1963), "In appraising the effects of any price cut or the corresponding response to it, both the Federal Trade Commission and the courts must make realistic appraisals of relevant competitive facts. Invocation of mechanical word formulas cannot be made to substitute for adequate probative analysis." Evaluation of pricing systems must be made in light of the broad purposes of the Robinson-Patman Act and the antitrust laws. That purpose is to encourage competition among buyers and sellers. See Great Atlantic & Pacific Tea Co. v. FTC, 440 U.S. 69, 99 S.Ct. 925, 59 L.Ed.2d 153 (1979). This Court has stated that "our goal in applying the Robinson-Patman Act is to maintain active competition—including price rivalry—among the members of the business community." International Air Industries, Inc., supra, 517 F.2d at 721.

Our review must necessarily focus on the evidence presented in this case. To avoid a directed verdict or judgment notwithstanding the verdict in a price discrimination case, the plaintiff "must have presented sufficient evidence to create a jury question with respect to each element of his case." Malcolm v. Marathon Oil Co., 642 F.2d 845, 848 (5th Cir. 1981). The plaintiff must introduce what this Court has defined as "substantial evidence to create a jury question." Boeing Co. v. Shipman, 411 F.2d 365, 375 (5th Cir. 1969) (en banc). This Court recently reaffirmed the Boeing standard in Maxey v. Freightliner Corp., 665 F.2d 1367, 1371 (5th Cir. 1982) (en banc). Substantial evidence is "evidence of such quality and weight that reasonable and fairminded persons in the exercise of impartial judgment might reach different conclusions." Maxey v. Freightliner Corp., 665 F.2d 1367, at 1371. Viewing all the evidence "in the light and with all reasonable inferences most favorable to the party opposed to the motion," there must be a "conflict in substantial evidence" in order to create a jury question. Id. at 1371.

When we turn to the plaintiff's evidence we find it inadequate in several areas, the first of which concerns whether the incentive programs were likely to lessen competition substantially among the Chrysler-Plymouth dealers or prevent Payne from competing. *See International Air Industries, Inc. v. American Excelsior Co., supra; Borden Co. v. FTC,* 381 F.2d 175, 178–81 (5th Cir. 1967). While the plaintiff presented a good deal of evidence on the mechanics of these programs, *i.e.,* how the dealers qualified for bonuses, there was very little evidence linking the programs to competition among the Birmingham dealers. The unsupported testimony of the plaintiff's witnesses spoke to either the supposed or the hypothesized effect of the programs and was in conflict even on that level. Mr. J. Truett Payne testified on the one hand that customers and salesmen had told him that the dealership was being undersold and that some salesmen had quit. Payne's expert witness, on the other hand, testified that the effect of the programs was not to undersell Payne, but rather to keep the price level artificially high. Neither witness, however, testified from the basis of actual sales experience or comparative sales pricing. Payne's unsupported testimony was on the basis of second hand statements repeated to him, while the expert testified from the perspective of general market theory.

The speculative and unsupported testimony in this case was legally insufficient to support a finding of unlawful price discrimination. The only documentary evidence the plaintiff presented to support its claim of lost sales was that its market share declined by 4% temporarily in 1972. There was no substantial evidence that the Chrysler incentive programs were the cause of this decline. Over the four year period of the challenged programs, Payne's market share actually increased by 1%.

In evaluating the degree of likely impact on competitive strength, we cannot ignore the actual competitive facts of the case. *See FTC v. Sun Oil, supra.* Mr. J. Truett Payne himself testified that the primary reason that some of the other dealers were able to grow during this period was that they had either opened new facilities or were located in the areas of town that were experiencing population growth. In addition, Payne testified that the main reason his used car business declined and substantially contributed to his business failure was that he was not able to get used car financing and was forced to wholesale his used cars. Furthermore, the defendant introduced testimony that the plaintiff had forsaken the new car market to some extent to pursue fleet sales and had made substantial sales in that area. Finally, the plaintiff did not dispute the testimony that the average difference in bonus payments over the relevant period of competition amounted to only $11.00 per car between the best performing dealer and the worst one, with Payne in third place.

The plaintiff's reliance on *FTC v. Morton Salt,* 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196 (1948), and its progeny is not relevant to the facts of this case. *Morton Salt* upheld an inference of likely injury from the fact of substantial price differences granted to market leaders in a highly competitive market in which minor price differences significantly affected competitors' low profit margins. The plaintiff's evidence established hardly any of these elements. We conclude that there was not a conflict in substantial evidence and that Chrysler was entitled to a directed verdict.

### III. Cognizable Injury.

In a treble damages suit under the Robinson-Patman Act a plaintiff must not only prove a violation of the Act, he must also demonstrate antitrust injury by a preponderance of the evidence. *See Perkins v. Standard Oil Co.,* 395 U.S. 642, 648, 89 S.Ct. 1871, 1874, 23 L.Ed.2d 599 (1969); *Zenith Radio, supra.* In addition, he must do so "as a matter of fact and with a fair degree of certainty." *Terrell v. Household Goods Carriers' Bureau, supra,* 494 F.2d at 20. Conclusory statements by the plaintiff, without evidentiary support, as to the fact of damage caused by the alleged antitrust violation are not sufficient. Evidence of a

slight decrease in market share roughly coincident with the alleged violation is not sufficient either. The plaintiff must put forth substantial evidence. If he fails to do so, the defendant is entitled to a directed verdict. *See, e.g., Comfort Trane Air Conditioning Co. v. Trane Co.*, 592 F.2d 1373, 1383 (5th Cir. 1979); *Yoder Brothers, Inc. v. California-Florida Plant Corp.*, 537 F.2d 1347, 1371 (5th Cir. 1976), *cert. denied*, 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977); *Foremost-McKesson v. Instrumentation Laboratory*, 527 F.2d 417, 418–20 (5th Cir. 1976); *Shumate & Co. v. National Ass'n of Securities Dealers, Inc.*, 509 F.2d 147, 153 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97 (1975). Only when the plaintiff has demonstrated the fact of injury may the court be lenient in the amount of evidence required to prove damages. *See Story Parchment Co., supra*, 282 U.S. at 562, 51 S.Ct. at 250 (1931). The plaintiff's evidence, as we have discussed, was not substantial as to either the likely or actual injury attributable to the Chrysler programs. As a result Chrysler was entitled to a directed verdict on this issue as well.

*IV. Damages.*

■ Payne relied on its calculation of the alleged price discrimination to establish the amount of its alleged lost sales and profits. To indicate the going concern value of the dealership at the time it was allegedly forced out of business, Payne relied on two alternative methods of calculation. Under the first, Payne's expert assumed a good will value for the dealership of $52,000 in 1955 and appreciated this amount over 20 years at an annual rate of 4%. The expert testified that the $52,000 figure was not based on an examination of Payne's financial statements. It represented an unsupported estimate by Mr. Payne. The 4% rate was a rough average of the prevailing inflation and prime interest rates from 1955 until the time Payne folded. Under the second method, Payne's expert discounted projections of what the dealership's profits would have been if it had continued in business free of the incentive programs. The expert testified that he did not take into account local market changes or conditions. The projections were apparently nothing more than some of Payne's past earnings roughly adjusted according to Chrysler's performance nationwide or the performance of the automobile industry in general. If Chrysler or the industry had a good year it was assumed, without an explanation why, that Payne would have a good year also.

As was the case with Payne's evidence to support antitrust violation and injury, this evidence was clearly not such as to allow the case to go to the jury. Price difference without more does not indicate the amount of lost sales or profits. Self-serving and unsupported assumptions cannot sustain a calculation of going concern value. The burden of putting forth substantial evidence is not satisfied by mere speculation and guess work. *See, e.g., Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264, 66 S.Ct. 574, 579, 90 L.Ed. 652 (1946); *Keener v. Sizzler Family Steak Houses*, 597 F.2d 453, 457 (5th Cir. 1979).

Even though the burden of proving damages is lessened by the fact of antitrust violation and injury, the plaintiff is still required to put forth substantial relevant evidence. *See Story Parchment, supra*. As the Supreme Court pointed out, the policy behind the lenient damages rules is that it would be inequitable to allow a wrongdoer to protect his illegal acts by insisting that the plaintiff meet a rigorous standard in calculating damages. *J. Truett Payne Co., supra*. Even if we held that Payne had presented substantial evidence of violation and injury and could invoke the standard of lenity, we would nonetheless conclude that Payne's evidence was insufficient. As we indicated, Payne relied on nothing more than the mere fact of alleged price difference and the hypothesized effect of the difference on its business. In calculating the going concern value, the plaintiff's expert failed to document his basic assumptions or to consider local market conditions. *See Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 667–68 (5th Cir. 1974). On this ground as well Chrysler was entitled to a directed

verdict. *See, e.g., Kestenbaum v. Falstaff Brewing Corp., supra,* 514 F.2d at 695; *Copper Liquor, Inc. v. Adolph Coors Co.,* 506 F.2d 934, 953–55 (5th Cir. 1975).

The district court is directed to enter judgment for Chrysler.

REVERSED AND REMANDED WITH DIRECTIONS.