715 F.2d 703
 1983-2 Trade Cases P 65,527, 13 Fed. R. Evid.
Serv. 1799
The BOHACK CORPORATION, Plaintiff-Appellant-Cross-Appellee,
v.
IOWA BEEF PROCESSORS, INC., Defendant-Appellee-Cross-Appellant,
and
Waldbaum, Inc., C.P. Sales, Inc., Walter Bodenstein and Ira
Waldbaum, Defendants-Appellees.
 Nos. 920, 1155, Dockets 82-7720, 82-7722.
 United States Court of Appeals,
Second Circuit.
 Argued March 7, 1983.
Decided Aug. 2, 1983.
 
 Robert E. Goldman, Garden City, N.Y. (Jesse I. Levine, Richard J. Eisenberg, Shaw, Goldman, Licitra, Levine & Weinberg, Garden City, N.Y., on brief), for plaintiff-appellant-cross-appellee.
 Edward W. Rothe, Chicago, Ill. (James T. Malysiak, Freeman, Rothe, Freeman & Salzman, P.C., Chicago, Ill., Harold R. Tyler, Jr., Gregory L. Diskant, Patterson, Belknap, Webb & Tyler, New York City, on brief), for defendant-appellee-cross-appellant.
 Arthur Kokot (Kay Collyer & Boose, New York City, on brief), for defendants-appellees Waldbaum, Inc., and Ira Waldbaum.
 Moore, Berson, Lifflander & Mewhinney, New York City (Michael R. Sonberg, New York City, of counsel), for defendants-appellees C.P. Sales, Inc., and Walter Bodenstein.
 Before KAUFMAN, TIMBERS and KEARSE, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff The Bohack Corporation ("Bohack") appeals from a final judgment of the United States District Court for the Eastern District of New York, following a jury trial before Jacob Mishler, Judge, dismissing its antitrust treble damage action against defendants Iowa Beef Processors Inc. ("IBP") and Waldbaum, Inc. ("Waldbaum"), for allegedly granting and receiving, respectively, discriminatory prices in violation of §§ 2(a) and (f) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13 (1976), and against all defendants for allegedly conspiring to violate the Robinson-Patman Act in violation of § 1 of the Sherman Act, 15 U.S.C. § 1 (1976). The district court dismissed the complaint after the jury answered special interrogatories finding that, although IBP had engaged in price discrimination in violation of the Robinson-Patman Act, the violation had not caused Bohack any injury. Bohack raises a number of claims of procedural error and argues that the jury's finding that the violation did not cause injury was against the weight of the evidence. IBP cross-appeals from so much of the judgment as dismissed its counterclaim against Bohack on the ground that the counterclaim had been extinguished by bankruptcy proceedings resulting in a plan for the reorganization of Bohack. We affirm the judgment of the district court in all respects.
 
 I. BACKGROUND
 
 2
 Bohack is a New York metropolitan area supermarket chain which, for a period during the 1970's, purchased beef from IBP, a large meat processor. In early 1970, IBP had begun marketing its beef in New York by a new method which it called "Eastern Cattle-Pak." This method used "boxed beef," which denotes beef that has been deboned and trimmed at the point of slaughter, vacuum packed, and shipped in palletized boxes. Eastern Cattle-Pak products--which included four primal cuts of beef--were sold by IBP to retailers on a standing order basis, with prices to be determined not by negotiation but by a formula taking into account prevailing market prices, grades of beef, and IBP's fees for its services in selection, processing, and shipping. IBP also sold, on a negotiated basis, traditional carcasses and nearly 200 other meat products.
 
 
 3
 IBP had had no success with its Cattle-Pak in New York until it entered into an arrangement with Waldbaum, another regional supermarket chain. In September 1970, IBP and Waldbaum agreed that Waldbaum would purchase beef from IBP exclusively, and that IBP would not raise its fees to Waldbaum. After other retailers commenced purchasing Eastern Cattle-Pak in late 1971, IBP raised its fees to retailers other than Waldbaum. It did not raise the fees it charged Waldbaum, however, until June 1974.
 
 
 4
 In 1972, Bohack began purchasing boxed beef from IBP and other suppliers on a negotiated basis. It began purchasing IBP Eastern Cattle-Pak on a formula basis in July 1973 and continued such purchases until June 1974. In July 1974, Bohack, which had been financially troubled for a number of years, filed for Chapter XI relief under the Bankruptcy Act of 1898, 11 U.S.C. §§ 1-1103 (1976) ("Bankruptcy Act"), repealed by Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2529 (1978).[1]
 
 
 5
 The present action was commenced by Bohack in August 1977, contending that the preferential price treatment given Waldbaum by IBP violated §§ 2(a) and (f) of the Robinson-Patman Act[2] and § 1 of the Sherman Act.[3] Bohack contended that the discriminatory pricing had placed it at a competitive disadvantage vis-a-vis Waldbaum, causing it to lose sales, profits, and customers to Waldbaum. IBP, which had delivered beef to Bohack within ten days of Bohack's filing under Chapter XI, counterclaimed under § 2-702(2) of the N.Y. Uniform Commercial Code ("N.Y.U.C.C.")[4] for reclamation.
 
 A. The First Trial
 
 6
 Bohack's antitrust claims were first tried before Judge Mishler and a jury in May 1981.[5] IBP admitted that it had granted Waldbaum special prices, but claimed, relying on Continental T.V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 53 n. 22, 97 S.Ct. 2549, 2559 n. 22, 53 L.Ed.2d 568 (1977), that the price differential was economically justified as necessary to introduce its products into the New York market. It thus offered testimony that it had initially experienced great difficulty in marketing Cattle-Pak in New York because of butcher union opposition to handling pre-fabricated beef, boycotts during a 1969-70 strike at one of IBP's plants, and the reluctance of meat buyers to accept new products.
 
 
 7
 Bohack sought to counter IBP's economic necessity defense by showing that IBP had already ensured its entry into the New York market by bribing union officials. Although the district court refused to allow Bohack to introduce into evidence the 1974 state court convictions of IBP and its chairman for bribery, it did permit Bohack to introduce the facts underlying those convictions. Thus, Bohack presented evidence that, at the time IBP sought to enter the New York market, it conducted brokerage negotiations with one Moe Steinman, who claimed that he could get IBP into the New York market. During the negotiations with IBP over brokerage commission rates, Steinman allegedly demanded 50 cents per hundred-weight instead of 25 cents, claiming that he needed the additional amount in order to "take care of" certain supermarket buyers and union officials.
 
 
 8
 Bohack also presented the testimony of two accountants who opined that Bohack would have saved $868,000 if its purchases from IBP had been made at the prices IBP charged Waldbaum, and a supermarket economist who concluded that as a result of the price discrimination Bohack had lost some $647,000 in profits. Witnesses for IBP disputed these conclusions and offered their views that Bohack's lower profits were the results of other factors and not of IBP's price discrimination.
 
 
 9
 The case was submitted to the jury on written questions. The jury found (1) that IBP and Waldbaum had violated the Robinson-Patman Act, (2) that there was no economic justification for the price advantage to Waldbaum, and (3) that none of the defendants had conspired to violate the Sherman Act. The jury failed, however, to reach a verdict on whether the price discrimination had caused injury to Bohack.
 
 
 10
 In light of the jury's inability to reach a conclusion on the causation and injury issues, Judge Mishler ordered that those issues be retried. Prior to the commencement of the retrial, he concluded that questions of violation, causation, and injury were very "close[ly] connect[ed]" and that "insurmountable problems" would attend the presentation to a jury of issues as to causation and injury alone, and he therefore ordered that the retrial include all of the Robinson-Patman issues.
 
 B. The Second Trial
 
 11
 The second trial commenced before Judge Mishler and a new jury in April 1982. IBP again conceded that it had granted Waldbaum preferential price treatment during the period in which Bohack had purchased Eastern Cattle-Paks from IBP. At this trial, however, IBP withdrew its defense of economic necessity and sought to defend principally by showing that the price differentials did not cause injury to Bohack and that Bohack's financial woes were self-inflicted. In light of IBP's abandonment of its contention that price differentials had been essential to secure entry into the market, the district court refused to allow Bohack to present its evidence as to IBP's bribery of union officials. The court ruled that that evidence would be irrelevant to any issues remaining in dispute and that the prejudice it would inject would far outweigh its probative value.
 
 
 12
 The evidence proffered as to whether IBP's violation had caused Bohack injury was generally similar to that presented at the first trial. In addition, Bohack introduced new expert evidence as to the amount of its damages.
 
 
 13
 The new jury was asked to return a special verdict based on written questions, which are reprinted in the margin,[6] and its findings were much the same as those of the first jury. It found that IBP had violated the Robinson-Patman Act but that the violation had not caused injury to Bohack within the four-year limitations period provided by 15 U.S.C. § 15b (1976). Having been instructed to go no further if it found that IBP's actions caused no injury, the jury did not reach the question of the conduct of Waldbaum. On May 7, 1982, the court entered a judgment dismissing Bohack's complaint.
 
 C. The Decision on IBP's Counterclaim
 
 14
 IBP's counterclaim, which sought reclamation in the amount of $155,686 on account of beef delivered to Bohack within ten days of the Chapter XI filing, had not been submitted to either jury because there were no material facts in dispute. After considering motions by both sides for summary judgment, the court dismissed the counterclaim as improperly brought. It ruled that the claims of reclamation creditors had been extinguished by the plan of arrangement confirmed by the bankruptcy court and that the stipulation between Bohack and IBP permitting IBP to assert its counterclaim was of no effect, because Bohack and IBP had not sought the permission of the bankruptcy court to preserve IBP's reclamation claim.
 
 
 15
 The court directed that the May 7, 1982 judgment be amended to include the dismissal of IBP's counterclaim, and an "Amended Judgment" was thus entered on August 31, 1982. The present appeal by Bohack, and cross-appeal by IBP, followed.
 
 II. BOHACK'S CLAIMS
 
 16
 On appeal Bohack raises a number of claims of error. Principally it asserts that the district court erred in (1) ordering a new trial as to all of the issues rather than just as to damages, (2) excluding from evidence at the second trial the proof as to IBP's bribery, (3) instructing the jury as to burden of proof on causation, and (4) denying Bohack's motion for judgment notwithstanding the verdict. We reject all of Bohack's contentions.
 
 
 17
 A. The Order for Retrial of All Robinson-Patman Issues
 
 
 18
 Following the first jury's finding that IBP and Waldbaum had violated the Robinson-Patman Act and its failure to agree on whether the violation caused Bohack injury, the district judge ordered that all of the Robinson-Patman issues be submitted to a new jury. Bohack contends the court erred in not limiting the retrial to the issues of causation and injury. We regard this contention as frivolous.
 
 
 19
 It is well established that a partial new trial "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed.2d 1188 (1931). In Gasoline Products the Supreme Court reversed a judgment of the court of appeals that had remanded the case for retrial of only the damages issues, because the Court concluded that the damages and liability questions were interwoven. Accord Northeastern Telephone Co. v. American Telephone and Telegraph Co., 651 F.2d 76, 95 (2d Cir.1981) (setting aside liability findings in Sherman Act case and ordering retrial as to both liability and damages), cert. denied, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 654 (1982); Caskey v. Village of Wayland, 375 F.2d 1004, 1009-10 (2d Cir.1967) (vacating judgment in negligence action because of error in charge on damages, but ordering retrial of both liability and damages issues); Hasbrouck v. Texaco, Inc., 663 F.2d 930 (9th Cir.1981) (requiring retrial of liability and damages issues in Robinson-Patman action, but no retrial of jurisdiction and immunity issues), cert. denied, --- U.S. ----, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982).
 
 
 20
 In the present case, Judge Mishler found that all of the liability issues were closely connected, indeed "inseparable." We see no basis for disputing this assessment. Bohack had presented claims of price differentials as to many beef products; IBP had conceded the existence of a price differential only as to its formula Eastern Cattle-Pak products. The first jury had not been asked to, nor did it, specify the products as to which it found defendants had violated the Robinson-Patman Act. The second jury thus could hardly have fathomed the issues of causation and injury to Bohack without considering the extent of the violation. Hence the court properly concluded that the second trial should include all Robinson-Patman issues. In any event, it is difficult to discern, even assuming, arguendo, that the violation issue should not have been retried, how Bohack was injured by the retrial: the second jury, like the first, found in Bohack's favor on this question.
 
 B. The Exclusion of the Bribery Evidence
 
 21
 Bohack contends that it is entitled to a new trial because the district court improperly excluded from the second trial evidence as to the participation by IBP and its chairman in the bribery of union officials. Upon IBP's withdrawal of its economic necessity defense, the district court concluded that the relevance of the bribery evidence was sufficiently decreased that its probative value was far outweighed by the prejudice it would introduce. We find no basis for disturbing this conclusion.
 
 
 22
 Rule 403 of the Federal Rules of Evidence grants the trial judge broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. See United States v. Aulet, 618 F.2d 182, 191 (2d Cir.1980). Because the trial judge "is in a superior position to evaluate the impact of the evidence, since he sees the witnesses, defendant[s], jurors, and counsel, and their mannerisms and reactions," United States v. Robinson, 560 F.2d 507, 517 (2d Cir.1977) (en banc), cert. denied, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978), we are reluctant to overturn his evidentiary rulings unless he has acted arbitrarily or irrationally. Id., 560 F.2d at 515; United States v. Aulet, supra.
 
 
 23
 Bohack argues that the bribery evidence was highly relevant principally because "[s]uch behavior is expressly prohibited by Section 2(c) of the Robinson-Patman Act"[7] (Bohack brief on appeal at 28), and that a violation of § 2(c) is evidence of a violation of § 2(a). We are unpersuaded. First, since Bohack neither pleaded nor sought to prove a claim under § 2(c), § 2(c) evidence would have been tangential, not central, to the case. Second, even if we accept the contention that proof of a § 2(c) violation would provide evidence of a § 2(a) violation, we see no reason to reverse because of the exclusion of the bribery evidence, since even without that evidence the jury found that IBP had violated the Robinson-Patman Act. Finally, we are unable to see any relevance whatever of the bribery evidence to the issues as to which the jury ruled against Bohack, i.e., whether the violation caused Bohack any injury.
 
 
 24
 The district court correctly viewed the proffered bribery evidence as inflammatory, see International Shoe Machine Corp. v. United Shoe Machinery Corp., 315 F.2d 449, 459 (1st Cir.1963), cert. denied, 375 U.S. 820, 84 S.Ct. 56, 11 L.Ed.2d 54 (1963), and we find no abuse of discretion in the decision to exclude it.
 
 
 25
 C. The Instructions as to Burden of Proof and Causation
 
 
 26
 Next Bohack contends that it is entitled to a new trial because of erroneous instructions given to the jury on the matter of Bohack's burden to prove that defendants' violation caused it injury. Bohack argues that the jury should have been instructed that if it found a violation, the burden of proof as to causation shifted to defendants, or, at least, Bohack's burden was lessened. We find no merit in this contention.
 
 
 27
 First, we note that Fed.R.Civ.P. 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict ...." Since it appears that Bohack did not object to the charge given by the trial court until after the jury had retired for its deliberations, its present argument appears to have been waived.[8]
 
 
 28
 Even had Bohack properly preserved an objection to the charge, we would find its argument unpersuasive. In a treble damage suit for violation of the Robinson-Patman Act a plaintiff must prove not only a violation of the Act, but also "injur[y] in its business or property" by reason of the violation. 15 U.S.C. § 15; J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 568, 101 S.Ct. 1923, 1930, 68 L.Ed.2d 442 (1981) ("We emphasize that even if there has been a violation of the Robinson-Patman Act, petitioner is not excused from its burden of proving antitrust injury and damages."); id. at 570, 101 S.Ct. at 1931 (Powell, J., dissenting in part); Perkins v. Standard Oil Co., 395 U.S. 642, 648, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969); Interstate Cigar Co. v. Sterling Drug Inc., 655 F.2d 29, 31 (2d Cir.1981). Once a violation has been established, the plaintiff's burden of proving antitrust injury and damages is "to some extent lightened," J. Truett Payne Co. v. Chrysler Motors Corp., supra, 451 U.S. at 568, 101 S.Ct. at 1930, in the sense that "[i]t is enough that the illegality is shown to be a material cause of the injury; a plaintiff need not exhaust all possible alternative sources of injury in fulfilling his burden of proving compensable injury...." Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 114 n. 9, 89 S.Ct. 1562, 1571 n. 9, 23 L.Ed.2d 129 (1969) (under § 4 of the Clayton Act). Still, the proposition that the violation was at least a material cause of the plaintiff's injury must be established by a preponderance of the evidence. See J. Truett Payne Co. v. Chrysler Motors Corp., supra, 451 U.S. at 570, 101 S.Ct. at 1931 (Powell, J., dissenting in part); Chrysler Credit Corp. v. J. Truett Payne Co., 670 F.2d 575, 581 (5th Cir.1982) (on remand), cert. denied, --- U.S. ----, 103 S.Ct. 212, 74 L.Ed.2d 169 (1982); Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931).
 
 
 29
 The charge in the present case, set forth in large part in the margin,[9] was consonant with these principles. The court correctly stated that Bohack bore the burden of proving causation by a "fair preponderance of the credible testimony" (Tr. 3404), but that it was required to show, not that the violation was the "sole and only cause" of its injury, but only that the violation "played a substantial part" in causing its losses. (Id. at 3415.) The court concluded:
 
 
 30
 Proof which shows a reasonable probability that the price discrimination had the effect of injury is sufficient. Plaintiff need not show that the price discrimination was a more substantial cause of injury than any other.
 
 
 31
 ... The plaintiff need not eliminate all possible alternative causes of injury in fulfilling its burden of proving compens[a]ble injury under the Act.
 
 
 32
 (Id. at 3416.)
 
 
 33
 Accordingly, we find in the charge no basis for reversal.D. The Denial of Judgment N.O.V.
 
 
 34
 We need not linger long over Bohack's final argument, i.e., that the jury's verdict against it on the issues of causation and injury was against the weight of the evidence and that it was entitled to a judgment n.o.v. In reviewing the denial of a motion for judgment n.o.v.,[10] the evidence must be viewed in the light most favorable to the party against whom the motion was made, and that party must be given the benefit of all reasonable inferences that might have been drawn in his favor from the evidence. See Simblest v. Maynard, 427 F.2d 1, 4 (2d Cir.1970). Denial of judgment n.o.v. may be overturned only if
 
 
 35
 the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.
 
 
 36
 Id.
 
 
 37
 The evidence that IBP's price discrimination caused Bohack injury rested primarily on the opinions of Bohack's expert witnesses. The conclusions of these experts were challenged in cross-examination and by defendants' rebutting witnesses. The assessment of the witnesses' credibility and the resolution of their conflicting testimony were matters strictly within the province of the jury. The jury was not required to credit the testimony of Bohack's witnesses and we are not entitled to overturn the jury's verdict.
 
 III. IBP'S RECLAMATION COUNTERCLAIM
 
 38
 In dismissing IBP's reclamation counterclaim, the district court ruled that the confirmation of Bohack's Chapter XI arrangement extinguished the claims of reclamation creditors and that IBP's claim had not been preserved. It reached this conclusion notwithstanding the agreement between Bohack and IBP that IBP could interpose a counterclaim in the present action, because there had been no approval of such a reservation by the bankruptcy judge. IBP challenges this ruling on the grounds that (1) the plan of arrangement "purported to cover only those reclamation claimants who agreed to trade their claims for status as unsecured creditors, with their claims enhanced by 15%" and "IBP never agreed to such a trade" (IBP brief on appeal at 42); (2) IBP never accepted the plan; and (3) a reclamation claimant has a "special status under the Bankruptcy laws." (Id. at 43.) We find these contentions unpersuasive.
 
 
 39
 Section 371 of the Bankruptcy Act, 11 U.S.C. § 771, provides as follows:
 
 
 40
 The confirmation of an arrangement shall discharge a debtor from all his unsecured debts and liabilities provided for by the arrangement, except as provided in the arrangement or the order confirming the arrangement, but excluding such debts as, under section 35 of this title, are not dischargeable.
 
 
 41
 Section 367(1) of the Bankruptcy Act, 11 U.S.C. § 767(1), provides that upon confirmation of an arrangement, "the arrangement and its provisions shall be binding ... upon all creditors of the debtor, whether or not they ... have accepted [the arrangement] ...." See Nassau Smelting & Refining Works, Ltd. v. Brightwood Bronze Foundry Co., 265 U.S. 269, 271, 44 S.Ct. 506, 507, 68 L.Ed. 1013 (1924); In re Super Electric Products Corp., 200 F.2d 790, 791 (3d Cir.1953); 9 J. Moore & L. King, Collier on Bankruptcy p 9.25 (14th ed. 1978).
 
 
 42
 In the present case, the district court found that the reclamation claims were conclusively covered by the plan of arrangement and that the plan had been approved by the requisite majority of the creditors:
 
 
 43
 IBP's reclamation claim, along with the claims of Bohack's other creditors were disposed of conclusively under the terms of Chapter XI of the Bankruptcy Act when an arrangement concerning the debtor's estate was confirmed by the bankruptcy judge following the acceptance of such arrangement by the requisite number of creditors.
 
 
 44
 (Memorandum of Decision and Order dated August 20, 1982, at 3.) These findings are not clearly erroneous. We find no support in the terms of the plan for IBP's contention that the claims of reclamation creditors were not conclusively covered, and IBP's nonacceptance of the plan is irrelevant in light of § 367(1).
 
 
 45
 We reject IBP's contention that as a reclamation creditor it has a "special status" that allows it to avoid the effect of a confirmed plan that, by its terms, purports to reach reclamation creditors. Section 371 of the Bankruptcy Act, 11 U.S.C. § 771, supra, provides that upon confirmation of an arrangement, a debtor shall be discharged from all of its unsecured debts and liabilities, with certain enumerated exceptions. IBP cannot claim to be a secured creditor, see 11 U.S.C. § 1(28); its claim does not fall within any of the enumerated exceptions for undischargeable debts, see § 17(a) of the Bankruptcy Act, 11 U.S.C. § 35(a); and its claim does not constitute a debt that, having priority over other debts, is to be paid in full, see § 64 of the Bankruptcy Act, 11 U.S.C. § 104 (made applicable to Chapter XI cases by § 302, 11 U.S.C. § 702). 8 J. Moore & L. King, supra, p 5.33. In short, we find no authority to support IBP's position and, given the strong interest in achieving finality in Chapter XI arrangements, we decline to adopt it.
 
 
 46
 We conclude that the district court properly dismissed IBP's reclamation counterclaim.
 
 CONCLUSION
 
 47
 The judgment of the district court is in all respects affirmed. Costs to the defendants.
 
 
 
 [1]
 In enacting the Bankruptcy Reform Act of 1978, Congress provided that "[a] case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if [the Bankruptcy Reform] Act had not been enacted ...." Pub.L.No. 95-598, § 403(a), 92 Stat. 2529, 2683 (1978). Although Congress provided that certain sections of the Bankruptcy Reform Act would nonetheless apply to cases brought under the Bankruptcy Act, see id. § 403(b), none of these sections is relevant here. Thus, because Bohack filed for Chapter XI relief in 1974, this case is governed in all respects by the provisions of the Bankruptcy Act
 
 
 [2]
 Sections 2(a) and (f) of the Robinson-Patman Act provide, in pertinent part, as follows:
 (a) Price; selection of customers
 It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: ... And provided further, That nothing herein contained shall prevent price changes from time to time where in response to changing conditions affecting the market for or the marketability of the goods concerned, such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned.
 (f) Knowingly inducing or receiving discriminatory price
 It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section.
 
 
 [3]
 Section 1 of the Sherman Act, 15 U.S.C. § 1, provides, in pertinent part, as follows:
 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.
 
 
 [4]
 N.Y.U.C.C. § 2-702(2) (McKinney 1964) provides:
 (2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.
 
 
 [5]
 The trial that commenced on May 11 ended in a mistrial on the following day. A new jury was empaneled and retrial was commenced on May 12. For purposes of this appeal, we refer to the May 12 trial as the "first trial."
 
 
 [6]
 The special verdict questions, with the jury's answers, are as follows:
 
 
 [1]
 Did Iowa Beef Processors, Inc. (IBP) violate the
 Robinson-Patman Price Discrimination Act?
 Yes X No
 ----- -----
 (If the answer is NO do not answer any further
 questions)
 
 
 [2]
 Did IBP's discriminatory pricing cause injury to Bohack
 at any time subsequent to July 3, 1973?
 Yes No X
 ----- -----
 (If the answer is NO do not answer any further
 questions)
 
 
 [3]
 The difference in cost to Bohack between what it paid
 to IBP and at the prices Waldbaum paid at the time of
 the purchases for like grade and quality beef is in the
 amount of $___________
 
 
 [4]
 Price discrimination proximately caused Bohack loss of
 profit in the amount of___________
 
 
 [5]
 Was Waldbaum aware that it had an illegal price
 advantage in its purchases under the Cattle-Pak formula
 over other customers of IBP subsequent to July 3, 1973?
 Yes _____ No _____
 
 
 [6]
 Did Waldbaum receive a price advantage on beef that
 was sold at a negotiated price?
 Yes _____ No _____
 (If the answer to 6 is NO do not answer 7)
 
 
 [7]
 Was Waldbaum aware that it had an illegal price
 advantage in its purchases of beef sold at a negotiated
 price subsequent to July 3, 1973?
 Yes _____ No _____
 (If the answer to 5 and 6 are NO do not answer 8)
 
 
 [8]
 Was Waldbaum aware at any time subsequent to July
 3, 1973 that IBP's price discrimination
 (1) had the effect of substantially lessening competition
 in the supermarket business in the area
 in which it competed?
 Yes _____ No _____
 (2) injured or impaired or prevented competition
 from Bohack?
 Yes _____ No _____
 
 
 [9]
 Was the price discrimination as to Waldbaum economically
 justifiable?
 Yes _____ No _____
 
 
 [7]
 Section 2(c), 15 U.S.C. § 13(c), provides as follows:
 (c) Payment or acceptance of commission, brokerage or other compensation
 It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.
 
 
 [8]
 For similar reasons we reject Bohack's contention that it is entitled to a reversal because the sequence of the written questions submitted to the jury, see note 6 supra, was improper. Although the parties discussed the special verdict questions at length, we find no suggestion in the record or in the briefs that Bohack objected to the sequence of the questions or to the instruction that the jury not consider questions concerning a violation by Waldbaum if it found against Bohack on the issue of causation. Having made no objection at trial, Bohack may not now be heard to object to the special verdict questions or instructions. Martin v. United Fruit Co., 272 F.2d 347, 348-49 (2d Cir.1959) (per curiam); see Fed.R.Civ.P. 49(a), 51. In any event, we see no impropriety in the sequence of the questions
 
 
 [9]
 As to causation, the district court charged in part as follows:
 If you find that the plaintiff has established [a violation] by a fair preponderance of the credible testimony then you go to the next question: Did IBP's discriminatory pricing cause injury to Bohack at any time subsequent to July 3, 1973?
 That is the fifth element in the list of elements I said the plaintiff must prove by a fair preponderance of the credible testimony. They must prove the price discrimination caused injury to the plaintiff.
 (Tr. 3403-04).
 Now I come back to the fourth question....
 Did IBP's discriminatory pricing cause injury to Bohack at any time subsequent to July 3, 1973?
 Now, you must find a relationship between the violation of the Act and injury. The plaintiff must establish by a fair preponderance of the evidence that it suffered a loss of sales and consequently a loss of profit because of the illegal price discrimination in violation of the Robinson-Patman Price Discrimination Act.
 The plaintiff does not claim nor is he obligated to prove that the violation was the sole and only cause of the loss of profit. It must, however, show that the violation played a substantial part in bringing about or causing the loss of sales and the loss of profit.
 In this case it is not necessary for the plaintiff to prove that Waldbaum, the favored customer, actually undersold the competition, advertised more, built and upgraded its stores, expanded its product mix, or any of the other means that make a supermarket competitive. The loss of Bohack may be shown by showing that the price discrimination diverted sales from Bohack that Bohack lost sales and therefore profit.
 It is not necessary that you find that competition was in fact lessened, injured or damaged, but only that the acts of the defendant may have substantially lessened competition, injured or destroyed some competition.
 Proof which shows a reasonable probability that the price discrimination had the effect of injury is sufficient. Plaintiff need not show that the price discrimination was a more substantial cause of injury than any other.
 The injury suffered must have been to plaintiff's competitive position in the supermarket business. However, it is enough that the illegality is shown to be a material cause of the injury. The plaintiff need not eliminate all possible alternative causes of injury in fulfilling its burden of proving compens[a]ble injury under the Act.
 (Tr. 3415-16.)
 
 
 [10]
 We reject IBP's contention that these contentions are not properly before the court because Bohack's motion for judgment n.o.v. or a new trial was not filed until June 8, 1981, "far beyond the ten days allowed by" Rules 50(b) and 59(b). (IBP brief on appeal at 27.) These Rules provide that motions for judgment n.o.v. or a new trial may not be made later than ten days after entry of "judgment." "Judgment" is defined in the Rules as a decree or order from which an appeal lies. Fed.R.Civ.P. 54(a). Since the May 7, 1982 judgment did not dispose of IBP's counterclaim and did not contain a certification of finality as envisioned by Fed.R.Civ.P. 54(b), it was not a "judgment" within the meaning of Rules 50(b) and 59(b). See 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice p 54.02, at 104 (2d ed. 1982); 6A J. Moore, Moore's Federal Practice p 59.09, at 59-228 to 59-229 (2d ed. 1983). Bohack's June 1982 motions were timely since an appealable judgment was not entered until August 1982. See id. at 59-221